No. 37,259

EASTERN KANSAS UTILITIES, INC., *Appellant*, v. THE CITY OF PAOLA, and THE STATE OF KANSAS, *ex rel.* Edward F. Arn, Attorney General, *Appellees.*

(196 P. 2d 199)

Opinion filed July 10, 1948.

*Douglas Hudson,* of Fort Scott, and *Oliver D. Rinehart,* of Paola, argued the cause, and *Howard Hudson, Douglas G. Hudson,* both of Fort Scott, *F. M. Harris* and *Basil W. Kelsey,* both of Ottawa, were with them on the briefs for the appellant.

*Robert L. Webb,* of Topeka, and *J. Milton Sullivant,* of Paola, argued the cause, and *Robert Stone, James A. McClure, Ralph W. Oman,* all of Topeka, *Bernard L. Sheridan* and *L. Perry Bishop,* both of Paola, were with them on the briefs for appellee City of Paola.

The opinion of the court was delivered by

HARVEY, C. J.: This was a suit to enjoin the defendant from issuing and selling certain "electric light plant bonds" of the city.

The city of Paola will be referred to as defendant unless otherwise stated. The appeal is from the judgment of the court overruling plaintiff's demurrer to defendant's answer, denying plaintiff's oral request to file a reply to the answer and sustaining the defendant's motion for judgment in its favor on the pleadings. Facts alleged by plaintiff in its petition, and admitted in defendant's answer, may be stated as follows: Plaintiff is a corporation which owns and operates the electric distributing plant in the city and is the owner of real and personal property within the city upon which it pays ad valorem taxes; that the defendant is a city of the second class, having all the power and authority conferred upon such cities by our statutes; that on October 7, 1947, the governing body of the city passed an ordinance, the first section of which reads:

"SECTION 1. The municipal officers of the City of Paola, Kansas, having authority to call an election in such municipality, or a majority of them, are hereby authorized and directed to call a special election of the qualified electors of said City to vote upon the proposition of authorizing the issuance of $380,000.00 of Electric Light Plant Bonds of said City for the purpose of constructing electric light works, including an electric generating plant and distribution system and appurtenances thereto, for the purpose of supplying such City and its inhabitants with electric light and power."

Other sections fixed the date of the election as November 4, 1947, named the polling places, set out the form of the ballot, and provided that due notice of the election should be given. The pertinent part of the notice for the election reads:

"NOTICE OF BOND ELECTION

"Public notice is hereby given to all qualified electors residing in the City of Paola, Kansas, that a special election will be held in said City on Tuesday, November 4, 1947, pursuant to an ordinance duly passed by the governing body of said City and approved by the Mayor, for the purpose of submitting to the legally qualified electors of said City the proposition of issuing the Electric Light Plant Bonds of said City in. the sum of $380,000.00 for the purpose of constructing electric light works, including an electric generating plant and distribution system and appurtenances thereto, for the purpose of supplying such City and its inhabitants with electric light and power."

It also fixed the polling places and the hours the polls would be open. The ballot used at the election reads:

"OFFICIAL BALLOT

"Shall the following be adopted?

"Shall the City of Paola, Kansas, issue its Electric Light Plant Bonds in the sum of $380,000.00 for the purpose of constructing electric light works, including an electric generating plant and distribution system and appurte-

nances thereto, for the purpose of supplying such City and its inhabitants with electric light and power?"

Directions were given for the marking of the ballot. At the election on November 4, 1947, 676 votes were cast in favor of the bonds and 671 against.

On November 14, 1947, the governing body of defendant caused to be published the following:

"NOTICE OF BOND SALE $380,000 ELECTRIC LIGHT PLANT
BONDS OF THE CITY OF PAOLA, KANSAS
"(General obligation, payable from
unlimited *ad valorem* taxes)."

The notice fixed November 25 as the time for receiving bids and recited:

"Said issue will consist of 380 bonds, each in the denomination of $1,000, dated December 1, 1947, and becoming due serially $20,000 on December 1 in each of the years 1949 to 1967, inclusive."

There were other provisions as to redeeming certain of the bonds before maturity, the rate of interest the bonds should bear, and that interest would be payable June 1, 1949, and June 1 and December 1 of each year, and provisions pertaining to the printing of the bonds and the furnishing of the legal opinion of named attorneys, and recited:

"All of said bonds will constitute general obligations of said City, payable both as to principal and interest from *ad valorem* taxes which may be levied without limit as to rate or amount upon all tangible taxable property, real and personal, within the territorial limits of said City."

It gave the assessed value of the property within the city for the years 1946 and 1947, and stated the total bonded indebtedness of the city was $33,000 aside from the bonds being offered for sale. The city ordinance, notice of election, official ballot and notice of bond sale were attached to the petition as Exhibits "A," "B," "C," and "D," and made a part thereof.

The plaintiff further alleged that the bonds of the defendant which it contemplates issuing and selling are general obligation bonds which if issued will constitute general obligations of the city and will become due and payable at all events by the city whether the revenues, if any, arising from the electric-light plant and distribution system constructed from the proceeds of the bonds be sufficient or not to meet the principal and interest; that the threatened action of the city is not authorized by law and may and will

result in the creation of a public burden and the levy of an illegal tax charge and assessment because of the necessity of making payments in all events by the city of the principal and interest on the bonds; that the bonds provide for the first payment of interest on June 1, 1949, and the payment of $20,000 on the principal and semiannual interest on December 1, 1949; that it is impossible, under existing conditions, for the city to construct an electric-light works, including an electric generating plant and distribution system and appurtenances thereto, so as to realize any possible profit to meet the interest obligation payable June 1, 1949, and the principal and interest payable December 1, 1949; and that in order to meet such obligations it will be necessary that a special bond levy be assessed for the tax year of 1948 upon the property of this plaintiff and all other taxpayers in the city.

It was alleged that the bonds are unauthorized by law and their issue would be illegal in the following respects: (a) There have been in effect at all times since October 7, 1947, laws providing for elections in cities of the second class, such as defendant, by which the electors may vote upon a proposal for the issuance of general obligation bonds, and there were also statutes providing for a vote for the issuance of revenue bonds payable only out of the revenues to be derived from such a plant and distribution system. (b) In the ordinance calling the election, in the notice of election, and in the ballot, Exhibits "A," "B," and "C," the following words appear:

"Shall the City of Paola, Kansas, issue its Electric Light Plant Bonds in the sum of $380,000.00 for the purpose . . ." etc.

That at no place in the ordinance calling for the election, in the notice of election, or in the ballot were the bonds described as general obligation bonds; that the first official recognition that the bonds were intended as general obligation bonds was revealed after the election in the notice of bond sales, as shown in Exhibit "D." (c) That from and after October 7 to November 4, 1947, newspaper advertisements and handbills were printed and distributed among the electors of the city by a committee, of which J. S. Todd, a member of the city council, was chairman, in which it was repeatedly stated that no tax levy was necessary for the payment of the bonds or interest, and that this would be met by profits from the operation of the plant and distribution system; that these advertisements appeared in both newspapers printed in the city, a copy of which was attached as Exhibit "E," and that the same

matter was printed on hand bills 12 by 18 inches in size, were distributed throughout the city and tacked on telephone poles and other public places.

"(d) Said ordinance calling the election, No. 1544, the notice of bond election and the form of ballot were intended to and did mislead and deceive the electors of the City of Paola, by inducing the electors to believe that the bond proposal contemplated revenue bonds to be paid out of revenues only, instead of general obligation bonds of the City of Paola; and said proposition was not clearly stated but was stated in equivocal terms, as hereinbefore more fully alleged."

Plaintiff further alleged that the defendant and its officers threatened to and will, unless enjoined, proceed to cause bonds to be issued and sold, notwithstanding the illegality therein, and that plaintiff has no adequate remedy at law against such action; that the state of Kansas, *ex rel.* Edward F. Arn, attorney general, is joined as a party defendant for the purpose of determining the validity of the bonds, and that it is to the advantage both of plaintiff and defendant that the state should be joined herein as a party in order that the adjudication may be effective, binding and conclusive.

The prayer was that the defendant and its officers be restrained and permanently enjoined from issuing or selling the bonds, and that it have such other relief to which it is entitled in equity, together with its costs.

The state, on the relation of the attorney general, filed its written entry of appearance "so that the court may have jurisdiction to try the issues in this cause."

The defendant filed an answer in which it admitted the matters hereinbefore stated as being admitted by the pleadings, and denied all other matters set out in the petition except those which should be admitted or alleged. It alleged that the ordinance, notice of election and ballots used, and the result of the election, contemplated the issuance of bonds representing the general obligations of the city and contemplated the levy of the tax for the purpose of paying the interest on the principal of the bonds when the same matured; that as prescribed by the statutes the principal on the bonds and the interest are also payable from the revenues derived from the sale and consumption of power and light. Defendant denied that the tax levy on account of such bonds would be an illegal tax and alleged that the proceedings are in conformity with

our statutes, and that the tax will constitute a valid and legal tax if and when the same is found to be necessary.

The defendant specifically denied that it instigated, approved or confirmed the matter set forth in Exhibit "E" attached to plaintiff's petition, and alleged that the matter set out therein is not the responsibility of the city and it has no bearing in this case, and denied that any tax levy would be necessary for the payment of the proposed bonds and the interest thereon. It further denied that it ever was the intention of the city to mislead or deceive the electors in any manner concerning the construction of the electric light and power plant, or the issuance of bonds therefor, or the election held for that purpose, and denied that anything on its part was done for the purpose of misleading the electors to believe that utility revenue bonds were to be issued instead of general obligation bonds, and it denied that the electors of the city were misled in respect thereto.

It further alleged that at all times mentioned herein there were two newspapers published in the city of Paola, that plaintiff knew said election was called for the purpose of voting general obligation bonds of the city, as evidenced by six-column advertisements run and paid for by the plaintiff in the newspapers there published. Copies of those advertisements are attached to the answer. That plaintiff also distributed a folder, a copy of which was attached to the answer, in which the bonds were referred to and described as general obligation bonds of the city.

The defendant admitted that ever since the ascertainment of the result of the election held November 4 defendant has intended to issue the general obligation bonds of the city in the amount of $380,000 for the purpose for which the bonds were voted, and that it would have done so had it not been restrained. Defendant further alleged that plaintiff failed to state a cause of action against the defendant, either in law or in equity, and that the prayer of the petition should be denied and the temporary injunction dissolved. The prayer was to the same effect.

We need not detail intervening pleadings and orders further than to say that upon plaintiff's application the court granted a temporary injunction conditioned upon plaintiff giving bond in the sum of $75,000, which was given. Plaintiff filed a motion for judgment on the pleadings and upon the admissions contained in defendant's answer, in which it admitted plaintiff's allegations con-

cerning Exhibits "A," "B," "C" and "D" and made other admissions by which. it is apparent that the proposition concerning the bonds was so obscurely stated that the electors might be misled thereby, and the proposition stated on the ballot was so equivocal and so apt to mislead that the election was thereby vitiated. On the date of the hearing of this motion defendant asked and obtained permission to file instanter an amendment to its answer. This amendment alleged that plaintiff knew and publicized the facts throughout the city that the proposition for which the election was called was not a proposition to issue utility revenue bonds of the city, but that it was a proposition to issue the municipal bonds of defendant, payable by tax levies, and that because of such fact the plaintiff is estopped from claiming that the proceedings and the proposition submitted to the electors was ambiguous or misleading.

Defendant denied that on October 7, 1947, or since, there was in effect any law providing for an election to be held by the city in order that the electors might vote upon the issuance of revenue bonds, for factual reasons stated. It further alleged that under chapter 32 of the Laws of 1933, special session, authority was granted to every corporation, or quasi-corporation, empowered to issue bonds for which taxes may be levied, to issue revenue bonds for the construction, etc. of any utility or facility of a revenue-producing character; that the securities so authorized, and interest thereon, were not in any manner payable from taxes, but were payable solely from the revenues of the utility; that the act took effect December 5, 1933, and remained in effect until June 30, 1942; that during the time the act was in effect many general obligation bonds were issued by the municipalities of Kansas; that in most, if not all cases, the bond proposition was submitted to the electors in substantially the same manner as in this case and without any specific recital in the ordinance, notice or ballot that the bonds would constitute general obligations of such municipalities; that in each instance, when such municipal bonds were issued, a transcript of the proceedings was filed with the state auditor, the bonds were offered to the school fund commission, which purchased many of them; that they were examined and approved by the attorney general; that since April 16, 1947, the effective date of chapter 107 of the Laws of 1947 (G. S. 1947 Supp., ch. 10, art. 12), many municipalities have issued municipal bonds which were general obligations for the acquisition or extension of municipal utility plants

for which the propositions were submitted to the electors; that in most, if not all of such cases, the bond propositions were submitted in substantially the same manner as the bond proposition was submitted in this case and without any specific recital in the ordinance or the notice or the ballot that the bonds would constitute general obligation bonds, and in each instance a transcript thereof was filed with the state auditor, the bonds were offered to the school fund commission and were examined and approved by the attorney general, and in no case where any such issue was thus offered were the bonds disapproved or rejected by the attorney general or by the state auditor upon the grounds that the proceedings leading up thereto were ambiguous or equivocal or that the voters were misled, and that the construction and interpretation thereon placed by the state auditor and attorney general upon the statutes of Kansas with respect to such bonds have become administrative and executive interpretations of such law and bond proceedings and have become proper and legal interpretations thereof, and defendant contends there is not and was not any ambiguity or equivocation in either the bond proceedings or in the statute, and that if any such ambiguity or equivocation ever existed the same is settled and determined by the interpretation placed thereon by the attorney general and the auditor of state.

Plaintiff filed a demurrer to defendant's answer and amended answer. The defendant filed a motion for judgment in its favor upon the pleadings upon the grounds that the pleadings show plaintiff is estopped from asserting the cause of action attempted to be asserted by it; that there is no equity in the contentions presented by plaintiff; that plaintiff has failed to state a cause of action against defendant.

On February 6, 1948, plaintiff's demurrer to defendant's answer, and amendment to answer, and defendant's motion for judgment in its favor on the pleadings, came on for hearing. The court overruled plaintiff's demurrer to defendant's answer and amendment thereto, denied plaintiff's oral request for leave to file a reply within ten days, sustained defendant's motion for judgment in its favor on the pleadings, set aside the temporary injunction previously issued, and rendered judgment for defendant. The court stayed the order setting aside the temporary injunction and the judgment for defendant for ten days and thereafter until the final determination of this case, if plaintiff appealed within ten days. The appeal by plaintiff was taken within that time.

The principal legal question for our determination is whether the defendant, in the ordinance, the notice of election and the ballot used language which clearly stated under what statute the proposed bonds would be issued.

The city had authority under G. S. 1935, 12-801, to issue "bonds of such city for the purpose of purchasing, constructing or extending works for the purpose of supplying such city and its inhabitants with . . . water, electric light, heating," . . . and if deemed advisable, "to combine a water and electric-light plant . . ." The proceedings for this are initiated by an ordinance (G. S. 1935, 12-802).

Since April 16, 1947, there have been two statutes under which bonds might have been issued by defendant for the purposes described in the ordinance. One of these is our "general bond law" (G. S. 1935, ch. 10, art. 1, as amended). This statute, by section 10-101, as clarified by section 10-128, 1947 Supp., defined the word "municipality" so as to include the defendant. Section 10-102 reads:

"'Municipal bonds,' as used in this chapter and all acts amendatory thereto, unless otherwise expressed in such amendment, shall mean and include all bonds issued by any municipality, except railroad aid bonds."

Section 10-112 reads:

"All municipal bonds shall constitute a general obligation of the municipality issuing the same and shall recite the authority under which they are issued and that they are issued in conformity with the provisions, restrictions and limitations thereof and that such bonds and interest thereon are to be paid by such municipality, . . ."

Section 10-113 makes it the duty of the officers charged with the levying of taxes to levy in any year a sum sufficient to pay the interest on such bonds, and the bonds falling due in that year; and section 10-125 reads:

"This act shall govern the issuance of all municipal bonds, except where different provisions are specifically provided by law, in which case the specific provisions shall control only so far as they conflict with this act."

Other provisions contained in the general bond law need not be specifically noted.

Since April 16, 1947, there has been in effect an act authorizing the issuance of revenue bonds, being ch. 10, art. 12, G. S. 1947 Supp. Section 10-1201 defines "municipal" as it is defined in section 10-101, and continues:

"'Utility' as used in this act means any publicly owned utility, instrumentality or facility of a revenue producing character. 'Revenue bonds' as used in this act means bonds issued by any municipality in this state to be paid exclusively from the revenue derived from the operation of a utility."

Section 10-1202 reads:

"Any municipality having a population of less than 100,000 inhabitants and authorized by the laws of the state of Kansas to issue general obligation bonds for the acquisition, construction, reconstruction, alteration, repair, improvement, extension or enlargement of any utility is hereby empowered to issue and sell revenue bonds in payment of the cost of such utility, . . ."

Subsequent sections of the act make it clear that such bonds, and the interest thereon, are to be paid solely from the revenues of the utility, and it is specifically provided (sec. 10-1207):

"No municipality shall have any right or authority to levy taxes to pay any of the principal of or interest on any such bonds . . ."

Before bonds can be issued under either statute they must be approved by a vote of the electors of the municipality. (Compare section 10-120 and section 10-1209.)

In the proceedings in the case before us the ordinance called a special election "to vote upon the proposition of authorizing the issuance of $380,000.00 of Electric Light Plant Bonds of said City for the purpose . . ." The notice of election was "for the purpose of submitting to the legally qualified electors of said city the proposition of issuing the electric light plant bonds of said city in the sum of $380,000 for the purpose," etc. The official city ballot submitted the proposition thus: "Shall the city of Paola, Kan., issue its electric light plant bonds in the sum of $380,000 for the purpose of constructing," etc.

The term "electric light plant bonds," used in the above instruments, is one apparently coined by the scrivener of the instruments. We do not find it in any of the statutes referred to. If the bonds were issued under chapter 10, article 1, the appropriate term to have used would be "municipal bonds of the city for the purpose," etc. That term is defined by the statute, which makes such bonds general obligation bonds, with the principal thereof and interest thereon to be paid from taxes levied upon the taxable property within the city. Other language might have been used, such as "the general obligation bonds of the city for the purpose," etc. Or the language used in the notice for the sale of the bonds could have been used.

If the bonds were issued under chapter 10, article 12, the appropriate term to have used is "Revenue bonds . . . to be paid exclusively from the revenue derived from the operation of a utility." The city might have issued either kind of bonds, since either class of bonds would have been "bonds of the city." No phrase specifically provided by statute was used, and an elector of the city could not tell by reading the city ordinance or the published notice of election or the ballot used for the election which type of bonds the city was planning to issue. The only notice given by the city of the particular class of bonds it was issuing was not given until after the election. It was first stated clearly in the notice published November 10 for the sale of the bonds. There it was stated by the city for the first time that the bonds were "general obligation, payable from unlimited ad valorem taxes." And the notice further stated: "All said bonds will constitute general obligations of such city, payable both as to principal and interest from ad valorem taxes which may be levied without limit as to rate or amount upon all tangible taxable property, real and personal, within the territorial limits of said city."

Certainly it is true that the defendant, in its ordinance and in its notice of election and in its ballot, did not advise the electors of the city of the kind of bonds it proposed to issue with the clearness and definiteness which would advise prospective buyers of the kind of bonds it proposed to issue. We are forced to the view that had it done so the result of the election might have been different, since the bonds carried by only five votes out of a total of 1,347. The record discloses that during the election campaign divergent views were urged upon the electors as to the kind of bonds the city proposed to issue. Defendant attached to its answer copies of advertisements run in the newspapers and paid for by plaintiff which contained various arguments in opposition to the bonds, and which included a statement that the bonds, if issued, would be general obligation bonds payable, both as to principal and interest, by taxes levied upon all of the taxable property of the city. This statement was correct if the bonds were to be general obligation bonds of the city. Plaintiff set forth in its petition a copy of a statement alleged to have been printed in the newspapers of the city and on placards distributed and posted throughout the city by a committee, of which a member of the city council was chairman, to the effect that no tax levy would be necessary to pay for

the municipal light plant. This statement was correct only if the bonds were to be revenue bonds. In view of the fact that under the proposal to sell the bonds interest would be due June 1, 1949, and both interest and $20,000 on the principal would be due December 1, 1949, it seems clear that a tax levy for 1948 would be necessary. Other situations throughout the terms of the bonds might necessitate a tax levy even though receipts from the sale of electric energy could be used to supplant or reduce the amount needed to pay the bonds and interest thereon.

In *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 117, 45 P. 2d 877, it was held:

"The election law contemplates that when a special proposition is submitted to a popular vote the recital on the ballot shall clearly state the substance of the question the electors are to vote upon; and where that proposition is so obscurely stated that the electors may be misled thereby, the election is vitiated; . . ."

To the same effect is *Leavenworth v. Wilson*, 69 Kan. 74, 76 Pac. 400; *Board of Education v. Powers*, 142 Kan. 664, 51 P. 2d 421, and *Kansas Utilities Co. v. City of Paola*, 148 Kan. 267, 80 P. 2d 1084. See, also, *Drummond v. City of Columbus*, 136 Neb. 87, 285 N. W. 109; *Wyatt v. Town of Manning*, 217 Iowa 929, 250 N. W. 141; *Pennington v. Fairbanks, Morse & Co.*, 217 Iowa 1117, 253 N. W. 60, and the many cases cited therein.

Counsel for the defendant cite and rely heavily upon *Humphrey v. City of Pratt*, 93 Kan. 413, 144 Pac. 197. We think the case is not particularly helpful. The statute under which that election was held (Laws 1905, sec. 3, ch. 101) set out the form of the ballot to be used in the election. In the opinion it was said:

"The ordinance and proclamation contained all the enlightenment the statute requires, and the district could not defeat the bonds because provisions which the legislature did not deem essential were not inserted." (p. 416.)

There was no controversy in that case as to whether the bonds were issued under one statute, which required their payment by ad valorem taxes on property, or whether they would be paid only from revenues of the utility. Defendant alleged and argues here that it was in no way responsible for the action of the committee headed by a member of its council in advising the electors that no taxes would be necessary to pay the bonds. It may be granted that no formal action by defendant was taken authorizing the publication of that kind of a statement. The fact remains, however, that defendant, by its lack of clarity in the ordinance, notice of

election and election ballot, laid the basis for that type of controversy. It cannot escape its own derelictions by simply denying responsibility for what a group of electors did. It had left the door open for an argument as to whether the bonds would be paid by taxation or from revenues only. The fact that a member of the city council headed the committee is a circumstance giving weight to the erroneous information. The city in its official capacity did nothing to clarify that controverted issue. It should have submitted the proposition so clearly that the controversy would not have arisen. We conclude the election was vitiated by the obscure manner used by defendant in submitting it.

Other points should be noted. Defendant alleged some factual situations upon which is based an argument that G. S. 1947 Supp., ch. 10, art. 12, was not available. We have examined these and find they are argumentative rather than substantial. Indeed, we see no legal reason why the statute mentioned was not available.

Defendant alleged and argues here that plaintiff knew the proposition submitted to the electors was to vote the general obligation of the city and is therefore estopped from maintaining this action. We think the point is not well taken. It is true plaintiff did present several arguments in opposition to the bonds, one of them being that the bonds, if issued, would be the general obligation bonds of the city. That particular point was controverted by the action of the committee, of which a member of the council was chairman, and which tended to give at least some semiofficial recognition. But without regard to whether it had been controverted at all we think plaintiff's actions in that particular would not estop it from bringing this action. In the *Prohibitory-Amendment Cases*, 24 Kan. 700, and *Electric Co. v. City of Larned*, 96 Kan. 33, 149 Pac. 704, cited by defendant upon this point, the question as here presented was neither presented nor decided.

Defendant alleged that under an earlier statute (Special Session Laws 1933, ch. 32, alleged to have been in effect from December 5, 1933, to June 30, 1942), which authorized municipalities to issue revenue bonds for the construction or improvement of utilities, and also under G. S. 1947 Supp., ch. 10, art. 12, a great many general obligation bonds were issued, approved by the attorney general and registered by the state auditor, in which the proposition in most cases had been submitted to the electors substantially as it was in this case, and that this made an administrative and executive inter-

pretation of the validity of bonds so issued. This doctrine is rarely relied upon, and in this case cannot be relied upon in view of the fact that the state, on the relation of the attorney general, entered its appearance in this action, "so that the court may have jurisdiction to try the issues in this cause." We can hardly conceive this would have been done if the issues here presented had been settled by administrative or executive practices.

From what has been said it necessarily follows that the judgment of the trial court should be reversed with directions to enter judgment for plaintiff. It is so ordered.

THIELE, WEDELL and HOCH, JJ., dissent.