No. 46,795

STATE OF KANSAS, ex rel. PAUL L. AYLWARD, Special County Attorney for Edwards County, Kansas, *Appellant,* v. HARRY KERNS, JACK H. MILLER, HUBERT FATZER, County Commissioners of Edwards County, Kansas, and MAE TAYLOR, County Clerk of Edwards County, Kansas, *Appellees.*

(502 P. 2d 639)

Opinion filed November 4, 1972.

*Paul L. Aylward,* of Ellsworth, was on the brief for the appellant.

*R. R. Mitchell, of* Dodge City, argued the cause, and *A. L. Moffat,* of Kinsley, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from the denial of a petition requesting a writ of mandamus and a declaratory judgment. The appellant requested the Edwards County district court to declare a hospital bond election to be a valid election, and requested that a writ of mandamus issue to the county commissioners of Edwards County directing them to issue and sell the general obligation bonds as authorized by a special bond election.

The record discloses that over the past several years citizens of Edwards County had become concerned about the adequacy of the existing Edwards County hospital to meet the medical needs of the

area served by that hospital. This concern eventually ripened into an application for the construction of a new hospital in Edwards County.

On January 21, 1971, the health facilities planning committee of the Southwest Central Region Health Planning Council reported favorably on the Edwards County hospital application.

On February 25, 1971, the Edwards County hospital board of trustees met to consider construction of a fifty bed hospital. A motion to recommend construction of a new hospital based upon a finding of need for the construction thereof *failed* to receive a majority vote of the trustees, however, the board of trustees did pass a resolution by unanimous vote which recited the following facts:

"BE IT RESOLVED; Whereas the Edwards County Hospital Board of Trustees have this 25th day of February, 1971, by a majority, voted not to recommend the issuance of general obligation bonds for the construction of a new hospital and remodeling of the present hospital, we none-the-less, desiring not to be the sole judge of said proposition, request the Edwards County Board of County Commissioners to call a special election for April 6, 1971 and let the electorate of Edwards County make their decision."

On March 1, 1971, the board of county commissioners of Edwards County, Kansas, met in regular session with two hospital trustees present. The county commissioner moved to accept the resolution of the hospital trustees and this was done by a unanimous vote of the county commissioners.

At this same session, the county commissioners adopted and approved a resolution which reads in pertinent part as follows:

"WHEREAS, said hospital trustees *have found that a need exists for more and improved hospital facilities within said county* and have requested the board of county commissioners of said county to submit to the qualified electors of said county the proposition of said county issuing general obligation bonds of said county to acquire a site and construct, equip and furnish *an addition to said hospital* and to issue $100,000.00 of bonds under K. S. A. 1970 Supp. 19-15,116 to remodel the existing hospital building; and

"WHEREAS, the estimated cost of acquiring a site, constructing, equipping and furnishing *an addition* to said hospital is $1,027,300.00; and

"WHEREAS, said board of county commissioners *finds that an addition to said hospital is needed* and should be constructed and that the qualified electors of the county should have submitted to them the proposition of said county issuing its general obligation bonds in an amount not to exceed $1,027,300.00 to acquire a site and to construct, equip and furnish *said addition;* and

"WHEREAS, said board of county commissioners further finds that said County should issue bonds in the amount of $100,000.00 under K. S. A. 1970 Supp. 19-15,116 to remodel the existing hospital building; and

WHEREAS, said board of county commissioners has authority to call such an election *pursuant to K. S. A. 19-1878* and finds that said proposition should be submitted at a special election to be held in conjunction with municipal and school district elections to be held on the 6th day of April, 1971. . . ." (Emphasis added.)

(It should be noted the county commissioners made a false recital in their resolution in that the hospital trustees *did not find a need existed* for more and improved hospital facilities.)

The county commissioners attempted to rectify their false recitation in the resolution of March 1, 1971, by adopting a resolution at their June 7, 1971, meeting which stated,

"Number 4—WHEREAS: to be expunged and in lieu of, for a true record, be stated that the Board of County Commissioners adopted a request that an election should be submitted to the people as provided in the second resolution submitted by the Board of Trustees of the Edwards County Hospital.

"Number 6—WHEREAS: To be expunged from the record and in lieu thereof submit the true statement that the Board of County Commissioners made no findings that a hospital is needed and should be constructed, but did accept the second resolution by the Edwards County Hospital Board of Trustees referred to in minutes of March 1, 1971 and stated:

"BE IT RESOLVED—

"WHEREAS: The Edwards County Hospital Board of Trustees have this 25th day of February, by a majority, voted not to recommend the issuance of general obligation bonds for the construction of a new hospital and remodeling of the present hospital, we none-the-less, desiring not to be the sole judge of said proposition, request the Edwards County Board of County Commissioners to call a Special Election for April 6, 1971 and let the electorate of Edwards County make their decision."

Notice of said election was published in the Kinsley, Kansas, Mercury for three consecutive weeks with the first publication being on March 11, 1971, and the last publication being on March 25, 1971. The issuance of the bonds was approved at the election by a vote of 1,150 to 824.

On May 28, 1971, at a regular meeting the board of county commissioners *refused* to adopt a resolution instructing the county attorney to proceed with the issuance and sale of such bonds. Instead the county commissioners voted to issue $400,000 worth of bonds.

Thereafter the county commissioners requested an attorney general's opinion on the sufficiency of the proceedings leading to the election. The attorney general responded on August 5, 1971, with an opinion which informed the county commissioners the proper steps were not taken; that the bond election was void, and that the attorney general would not approve the issuance of any bonds under such an election.

On application of J. Byron Meeks, the regularly elected county attorney of Edwards County, that a special county attorney be appointed to investigate the bond election proceedings by reason of his disqualification (Mr. Meeks having previously on March 1, 1971, associated himself with the bond attorney employed under contract with the board of county commissioners of Edwards County for the issuance and sale of general obligation bonds authorized by the bond election here in controversy), the district judge, Maurice Wildgen, on July 6, 1971, appointed Louis James as special county attorney for Edwards County, and empowered him to investigate all matters relating to the election, authorization and issuance of·general obligation bonds for the Edwards County hospital. Mr. James transmitted a letter to district court Judge Maurice Wildgen dated August 27, 1971, in which he said,

"Pursuant to your Order appointing me as Special County Attorney of Edwards County for the special purpose of investigating all matters with rela· tion to the election, authorization, and issuance of general obligation bonds for the Edwards County Hospital I have made an investigation of the facts and the law involved and wish now to report my findings and conclusions.

". . . On August 17, 1970, The Board of County Commissioners appointed a Board of Hospital Trustees pursuant to K. S. A. 19-1803. This was for the purpose of enabling a bond election to be called pursuant to K. S. A. 19-1878, which authorizes such an election after the Board of Trustees have certified to The Board of County Commissioners that proceeds from previous bonds and taxes are insufficient to build an addition to the present or build and equip a new hospital. Such certification must also contain the amount of funds necessary. On February 25, 1971, the Hospital Trustees voted not to recommend the issuance of bonds for the construction of a new hospital but did request the Board of County Commissioners to call a special election to decide the bond question. On March 1, 1971, the Board of County Commissioners adopted a resolution calling for a special bond election, citing as their authority K. S. A. 19-1878. The election carried by a vote of 1150 to 824. On May 28, 1971, a proposed resolution to issue the bonds authorized by the election failed for lack of a second. A subsequent motion to issue $400,000.00 in bonds was adopted.

"At the time I commenced my investigation the situation was at a stalemate. The Commissioners were not moving forward with the issuance of bonds, the County Attorney had disqualified himself, and the Attorney General's office had not responded to requests for a written opinion. The need for an authoritative interpretation of the situation for the guidance of The Board of County Commissioners and the taxpayers of Edwards County was apparent so I proceeded to determine the method for obtaining such an interpretation. . . .

". . . Since the facts were clear that none of the procedural requirements of K. S. A. 19-1878 were followed (no written certification was received from the Board of Trustees, no certification was published in the County paper,

no protests were received from the taxpayers) *I concluded an appropriate means to obtain the necessary guidelines for the Board and the people of Edwards County would be the filing of an action to enjoin the issuance of the bonds. . . .* In the opinion of the Attorney General the election was void and the registration of the bonds would not be approved by his office. The Board of County Commissioners advised that they would abide by this opinion." (Emphasis added.)

The court apparently accepted Mr. James' report as nothing further was done until J. Byron Meeks suggested a judicial determination should be made. The court then appointed Mr. Paul L. Aylward as a second special county attorney for Edwards County on October 6, 1971.

Mr. Aylward, after his appointment as special county attorney for Edwards County, filed a petition in the Edwards County district court which sought a writ of mandamus directing the defendant's to issue the bonds as well as a declaratory judgment stating the bond election to be valid. After submission of briefs by both parties, the case was argued before an assigned district judge. Thereafter judgment was entered for the defendants on January 5, 1972, and the appellant has duly perfected its appeal.

K. S. A. 19-1878 provides in pertinent part that,

"Whenever a county hospital has been established in any county under the provisions of article 18 of chapter 19 of the General Statutes of 1949, and acts amendatory thereof and supplemental thereto, and bonds have been issued or a tax levy made by the county as authorized by the election establishing such hospital, the board of county commissioners of said county shall, upon receiving the written certification of the board of trustees of said hospital, that proceeds from the bonds issued or taxes levied, plus all other funds available are insufficient to acquire a site, or build an addition to a present hospital or build and equip a hospital of the size and capacity necessary to supply the needs of said county and stating the amount needed to complete the erection and equipping of said hospital, issue additional bonds of said county if said original funds were raised by tax levy, make an additional tax levy. . . . *Provided,* That before the issuance of any such bonds or the levying of any such tax the board of county commissioners shall cause to be published once a week for three (3) consecutive weeks in any paper of general circulation within said county, a notice which shall contain such written certification of said board of trustees of such hospital and shall state that unless protests are received, signed by twenty-five percent (25%) of the legal electors of said county and filed with the county clerk of said county within sixty (60) days after the first publication of said notice, that the said county commissioners will issue the amount of bonds or levy taxes sufficient to raise the amount of money requested in said written certification.

"If within sixty (60) days after the first publication of said notice, protests signed by twenty-five percent (25%) of the legal electors of said county, as

determined by the total vote for governor at the last general election are filed with the county clerk of said county and are found by the board of county commissioners to contain the requisite number of protesters, the board of county commissioners shall within sixty (60) days thereafter, call a special election at which election the question of issuing the said bonds or of levying the said taxes shall be submitted to the electors of said county as provided by law: . . .

"If the majority of the electors voting at such election vote in favor of issuance of such bonds or levying said taxes or if there shall be no protest signed by twenty-five percent (25%) of the said electors, filed with the county clerk within sixty (60) days, the board of county commissioners shall proceed to issue and sell said bonds. . . ."

It is abundantly clear from the record the authority upon which the board of county commissioners was proceeding to establish an *addition* to the hospital facilities in Edwards County was K. S. A. 19-1878. The March 1st resolution of the county commissioners was couched in the legal phraseology of this statute, and it attempted to supply the necessary statutory finding the board of hospital trustees refused to make; the resolution directing the special bond election stated it was to be held pursuant to 19-1878, *supra;* the publication notice set forth the election was called under the authority of 19-1878, *supra;* and the ballot referred to the authority of 19-1878, *supra,* for the issuance of the bonds.

Unfortunately the conditions specified in the statute to authorize the bond election were not fulfilled. The hospital trustees did not find that a need existed for more and improved hospital facilities in Edwards County. The false recital by the board of county commissioners in their resolution of March 1st (later expunged) could not supply the certification required, and the board of trustees of the hospital, having declined to make the requisite finding under the statute, could not shift this duty to the county commissioners or to the electorate.

An analagous situation was presented in *Stewart v. Gish,* 109 Kan. 206, 198 Pac. 259, where the court held the call for an election, to be held after the creation of a rural high-school district, to vote upon the erection of a building is required to be made by the board of such district, and such an election held upon call of the county commissioners is a nullity.

The events leading up to the election and procedures followed are not mere irregularities that can be overlooked, as urged by the appellant, but show a complete failure to follow the prescribed statutory steps which confer jurisdiction on the board of county

commissioners to call a special election under K. S. A. 19-1878. The failure to comply with the statutory requirements renders the bond election void.

Where a statute authorizes the holding of an election only on the taking of a prescribed step, this prescribed step constitutes the foundation for holding the election and an omission to take it renders the election a nullity. The issuance and registration of bonds thus irregularly voted by the electorate can not be compelled by a writ of mandamus. (*Greeley County v. Davis*, 199 Kan. 1, 160 Pac. 581; and 29 C. J. S. elections, § 68.)

Any voter who took the trouble to check the statute cited by the county commissioners as authority for the bond election would have been misled, not only by the statute but also by the March 1st resolution. The voter would be led to believe the board of hospital trustees had made the requisite determination of need. This would make a difference in the attitude of the voters on the bond issue. (See, *City of Coffeyville v. Robb*, 165 Kan. 219, 194 P. 2d 475; and *Eastern Kansas Utilities, Inc., v. City of Paola*, 165 Kan. 558, 196 P. 2d 199.)

The appellant contends the bond election did substantially comply with the K. S. A. 19-1878 because it states the bond election under that statute is to be held as provided by law. The appellant argues under K. S. A. 1971 Supp. 19-15,116 the election is to be called, held and bonds issued in the manner provided by the general bond law. But there is no way these proceedings may be transformed into proceedings under 19-15,116, *supra*. It would be impossible to circumvent K. S. A. 10-112 which sets forth what recitals must be made in the bonds to impart absolute verity that all proceedings and conditions precedent have been had and performed to authorize their issuance and make them negotiable.

The appellees challenge the appointment of Paul L. Aylward as a second special county attorney for Edwards County, contending the appointment was void because K. S. A. 19-711 does not authorize continuing appointments of special county attorneys. They argue the appointment of Louis James as a special county attorney precluded the subsequent appointment of Mr. Aylward because Mr. James was empowered to use his own discretion in the matter at hand.

On the facts here presented the appointment of Mr. Aylward as a second special county attorney by the court was erroneous. Under

19-711, *supra*, Louis James was already appointed and acting as special county attorney. No conflict existed between Mr. James and the board of county commissioners of Edwards County. The only apparent conflict was between J. Byron Meeks and the results of the investigation by Mr. James.

After a special county attorney has been appointed and has acted upon the matter for which he was specifically appointed, and he has exercised the discretion which necessarily rests in a public officer, a second special county attorney cannot be appointed merely because the elected county attorney or the court is dissatisfied with the action taken by the first appointed special county attorney. A special county attorney becomes a public officer and as such his discretionary acts and decisions cannot be controlled by the court. Louis James in his discretion as special county attorney decided that a mandamus action should not be brought. His discretionary decision cannot be reversed by appointing a second county attorney to make an opposite decision.

The county attorney exercises the powers of an attorney general within his county. (*State, ex rel., v. Baker*, 156 Kan. 439, 134 P. 2d 386.) Here Louis James was authorized to exercise these powers in the matter of the hospital bond election.

Mandamus will not lie to control discretionary acts of public officers. (Hatcher's Kansas Digest, Mandamus § 25 and cases cited therein.)

The appointment of Paul L. Aylward as special county attorney by the district court was void. Since no statute authorized his appointment, he was not validly acting as a public officer, and he had no right to invoke the powers of the state in a mandamus proceeding.

The lower court's determination of this matter as indicated by its journal entry is substantially in accordance with the foregoing opinion.

The judgment is affirmed.

FATZER, C. J., not participating.