City of Emporia v. Norton.

CITY OF EMPORIA v. H. E. NORTON, *et al.*

1. CONSTRUCTION OF STATUTES; *General Rule as to Repeals; Qualification.* The rule of construction, (Gen. Stat. p. 999,) that "The provisions of any statute so far as they are the same as those of any prior enactment, shall be construed as a continuation of such provisions and not as an amendment," is subject to the qualification, "unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute."

2. ———— *Legislative Intent, Ascertained.* In determining the intent of the legislature, the court is not limited to a mere consideration of the words employed, but may properly look to the purpose to be accomplished, the necessity and effect of the statute, under the different constructions suggested.

3. ———— It will not be imputed to the legislature that it intended

to go through the form and time and expense of legislation to accomplish nothing, or to do that already fully and completely done.

4. ―――― *Re-enactment of Laws.* It may· be stated as a general rule, that where the legislature enacts a law which is the same in terms as a former statute, if such former statute has prior thereto wholly accomplished its purpose, and exhausted its force, the latter law must be held, notwithstanding the rule of construction quoted in the first paragraph of this syllabus, to .be a new enactment, and not merely a continuation of the former.

## *Motion for Rehearing.*

THE action of *Norton* and others was for an injunction against the treasurer of Lyon county, the *City of Emporia,* and others, to restrain the collection of certain "assessments" levied by the city of Emporia in 1871 on the lots of the plaintiffs to pay contractors for macadamizing, curbing and guttering Commercial street in said city. The case was in this court first at the July Term 1872, and is reported in 10 Kas., 491, as *Gilmore v. Norton.* It came here again, and is reported in 13 Kas., 569, as *City of Emporia v. Norton.* In each instance the district court had decreed a perpetual injunction in favor of *Norton* and others, and in.each this court reversed the decree of the district court. *Norton* and others now move for a *rehearing* in the case last mentioned — *City of Emporia v. Norton,* 13 Kas. 569. The work for which the special taxes or "assessments" were levied on the lots of the adjacent lot-owners was done in 1871, under a contract with the city. When this contract was let, the city of Emporia was governed by the city-charter act of 1868, (Gen. Stat., ch. 19,) and the amendatory act passed and approved March 2d 1871, (ch. 62, Laws 1871, p. 144.) Said act of 1868 contained the following provision:

"SEC. 31. *Before* the city council shall make any contract for building bridges or sidewalks, or for any·work on streets, or for any other work or improvement, an estimate of the cost thereof *shall* be made by the city engineer, and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate, and in advertising for bids for any such work, the council

shall cause the amount of such estimate to be published therewith." (Gen. Stat., p. 169.)

The district court decided that this section had not been complied with in this, that no *estimate* had been made of the cost of the improvements before the contract was made. Said ch. 62, laws of 1871, is entitled "An act relating to the powers and government of cities of the second class," etc., and it contains the following curative provision:

"Sec. 20. In case the corporate authorities of any city have attempted to levy or assess any taxes for improvement, or for the payment of any bonds or other evidences of debt, which taxes or bonds are or may have been informal, illegal or void, for the want of sufficient authority or other cause, the council of such city, at the time fixed for levying general taxes, shall relevy and reassess any such taxes in the manner provided in this act, or shall bond such taxes and assessments as herein provided for their city indebtedness."

Said acts of 1868 and 1871 were in force when the action below was commenced in October 1871. While said act was pending, and before it was decided in this court, when first here, the legislature passed ch. 100, laws of 1872, entitled "An act to incorporate cities of the second class, and to repeal former acts." (Laws of 1872, p. 192.) Said act contains most of the provisions of the charter-acts of 1868 and 1871. It also contains this section:

"Sec. 41. In case the corporate authorities of any city have attempted to levy any taxes or assessments for improvement, or for the payment of any bonds or other evidence of debt, which taxes, assessments or bonds are or may have been informal, illegal or void, for the want of sufficient authority or other cause, the council of such city at the time fixed for levying general taxes shall relevy and reassess any such assessments or taxes in the manner provided in this act." (Laws of 1872, p. 204.)

In 13 Kas. 569, 583, this court held that said § 41 was constitutional and valid, and its effect was to cure the defect in the original levy of the taxes or assessments complained of. The motion for a rehearing is addressed mainly to the construction and effect of the several provisions above quoted.

*R. M. Ruggles*, for Norton and others, in support of the motion for rehearing.

The opinion of the court was delivered by

BREWER, J.: A motion for a rehearing in this case has been made, and an extended written argument filed in support thereof. The point made is this: The court in the prior opinion rested the decision upon the curative effect of the 41st section of ch. 100 of the laws of 1872. The work, payment for which the city was seeking to collect, was done in 1871. This curative section was enacted subsequently, in 1872, and we held it valid, and applicable to the proceedings in question. Now counsel contends that this 41st section is substantially the same as the 20th section of ch. 62 of the laws of 1871, and must therefore be considered as enacted in 1871, and *before* instead of *after* the work. He rests this claim upon a rule for the construction of statutes found on page 999 of the Gen. Stat., which reads:

"The provisions of any statute, so far as they are the same as those of any prior enactment, shall be construed as a continuation of such provisions, and not as a new enactment."

This, as are all the other rules of construction, is subject however to this important qualification which prefaces them: "In the construction of the statutes of this state the following rules shall be observed, *unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute.*" Now in determining the intent of the legislature we are not limited to a mere consideration of the language employed. We may properly look to the purposes to be accomplished, the necessity and effect of the enactment under the different constructions suggested. Thus, if the legislature should pass at one session an act for raising revenue, which should specify no year, but simply direct the levy of a certain tax, and the succeeding legislature should pass an act in exactly the same language, no one would contend that the second was a mere continuation of the first,

taking effect as of its date, and providing for no new levy. For the manifest intent of the legislature, an intent not manifested by the form of words, but by the purposes to be accomplished, and the surrounding circumstances, repudiates such a construction. So, if in 1875 the legislature had passed an act in exactly the same language as ch. 20 of the laws of 1874, appropriating $7,000 to the Leavenworth Protestant Orphan Asylum, is it not plain that the same would have accomplished a new donation? So again, if year by year we found the legislature passing acts in the same terms, validating defective tax proceedings, and curing irregularities therein, would not every one be constrained to say that these successive acts should be construed as separate enactments, each operating upon all defects and irregularities prior to it, and not as simply a continuation of the first and operating only upon matters prior to that? For otherwise, why this repetition of laws? In the illustration last cited the first enactment would cure (so far as remedial legislation can cure) all the preëxisting irregularities and defects; and a mere repetition would add nothing to its curative power. And to impute to the legislature an intent to go through the form and time and expense of legislation to do that already fully and completely done, is unwarranted.

Now, is there any principle underlying these several cases of legislation which serves to indicate the legislative intent — any fact which makes plain its purpose? This fact is evident in reference to them all. The earlier act had accomplished its purpose, and spent its force prior to the enactment of the second. Much of legislation, perhaps most, is prospective in its reach, and, so to speak, of continuing operation. That is, it establishes a rule of action for future and indefinite time, operating upon all matters which may thereafter arise coming within its terms. Thus, the crimes act, defining what shall constitute certain offenses, and prescribing penalties therefor, operates upon all acts thereafter done coming within its terms. In case of a repetition of such legislation it may well be held, in view of the rule of construction above quoted, that in the

absence of any particular matters indicating a contrary intent, the second enactment simply keeps alive and continues in force the prior. This preserves that continuity in legislation which is the evident purpose of the rule. It prevents those unfortunate breaks and interruptions, with their deplorable results, which in the absence of such a rule have been so often felt and so frequently noticed by courts here and in other states. But there is some legislation which, though prospective, operates only for the performance of a single definite act; and some retrospective, operating upon existing and past circumstances, and defining the rights and obligations derived therefrom. In both such cases the law is without any continuing force. In the first case, when the act authorized or required has been done, the law has exhausted its purpose, and spent its force. And in the second, it accomplishes its purpose at the very moment of its passage. In a certain sense it dies at the moment of its birth. Thus, an act authorizing an appropriation, accomplishes its purpose and exhausts its force when the appropriation has actually been made; and an act validating prior defective acknowledgments, or irregular tax proceedings, accomplishes its purpose as soon as it is passed. It becomes no stronger by lapse of time, and reaches and operates upon no other matters. Now in such cases, if a succeeding legislature enacts a similar law it cannot be that the legislature intended simply a continuation of the prior law, for there is really nothing to continue—that law has ceased to have force. It has no living, present operation, nothing to be continued. And the only way in which an intent to accomplish anything can be established is by construing the later law as a new enactment. It must be presumed that the legislature was familiar with the rules it had laid down for the construction of its own enactments, understood the scope and effect of its legislation, and by every law intended to accomplish something. We think therefore that this may be stated as a general rule, that where the legislature enacts a law which is the same in

terms as a prior statute, if such prior statute has wholly accomplished its purpose, and spent its force, the latter law must be held, notwithstanding the rule of construction quoted, to be a new enactment, and not merely a continuation of the former.  We have given this subject careful thought, for our first impression, after reading the brief of counsel, was, that his point was a good one.  But the disastrous results which would flow from making this rule one of general application caused us to hesitate and reëxamine the matter.  That reëxamination has satisfied us of the soundness of the distinction we have drawn between the classes of legislation as affected by this rule.  Upon that, this motion is decided.  We may be pardoned also for suggesting this query: Does the rule in any case prevent the later law from operating as a law of the date of its passage upon all matters within its terms?  Is it not satisfied when it preserves a continuing force to the legislative command, a continuing operation to the legislative rule, leaving to each law to act as a present expression of legislative .intent upon all matters within its terms?  Must both laws in effect bear date as of the time of the enactment of the first?  We have assumed in this case that the law of 1871 was purely retrospective in its operation; that it applied only to prior defects and irregularities, and was not intended to apply to defects that might thereafter arise in subsequent tax proceedings.  Such is the claim of counsel, and for the purposes of this case and argument we do not question the claim.  We have also assumed that there is such a similarity between the two statutes as to bring them within the terms of the quoted rule, although the latter law speaks of "taxes and assessments for improvements," while the language of the former is "taxes for improvements."  The claim of counsel is, that the context makes it plain that this expression was intended to include both taxes and assessments in the sense that these terms are generally used.  To sustain this claim he has devoted a large portion of his argument.  Yet conceding both these matters to be as counsel claims, we

are constrained, for the reasons given, to decide adversely upon the main question, and must overrule his motion.

All the Justices concurring.