No. 23,621.

A. T. STEWART, *Appellant*, v. C. H. GISH et al., *Appellees*.

SYLLABUS BY THE COURT.

1. RURAL HIGH-SCHOOL DISTRICT—*District Board Alone Authorized to Call Election to Vote Bonds for Erection of Schoolhouse.* The call for an election to be held after the creation of a rural high-school district to vote upon the question of issuing its bonds for the erection of a building is required to be made by the board of such district, and such an election held upon call of the county commissioners is a nullity.

2. SAME—*Separate School-district Corporations Cannot Unite in Construction of School Building for their Joint Use.* A rural high-school district and an ordinary school district, formed in part from the same territory, each having statutory authority to erect a schoolhouse for its own use, cannot without further legislation unite in the construction of a single building for their joint use.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed May 28, 1921. Reversed.

*Edwin Brown,* of Troy, for the appellant.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: A. T. Stewart, a taxpayer having an interest as such in the matters referred to, brought an action against the officers of a rural high-school district to enjoin the issuance of bonds for the erection of a high-school building and against them and the officers of a school district to enjoin the erection of a single school building to be used by both organizations. He was denied relief by the district court, and appeals.

1. The right of the rural high-school district to issue the bonds is challenged on the ground that the election to vote upon the question of their issuance was called and canvassed by the board of county commissioners instead of by the rural high-school district board, as required by the statute according to the plaintiff's interpretation. The defendants interpret the law as authorizing either of such bodies to act in the matter. As the statute existed prior to March 22, 1917, the power of a rural high-school district board to issue bonds (except where such authority had been given by a vote taken at the election by which the district was created) was derived only from a provision giving it the same power as school-district boards. (Gen. Stat. 1915, § 9352.) In this condition of the statute it was held that the board of the high-school district and not the board of county commissioners was the proper body to call an election for schoolhouse bonds. (*Reynolds v. High-school District,* 101 Kan. 231, 165 Pac. 860.) On the date mentioned the section of the statute just cited was amended by the addition of provisions giving explicit authority to issue such bonds, in this language:

"The rural high-school district board shall have authority to issue the bonds of the rural high-school district for the purchase of a site and for the construction of a building or buildings for school purposes; provided, that no bonds shall be issued unless authorized by an election held in accordance with section 2 of this act [which authorizes a proposition to issue bonds to be voted upon at the election called to vote on the question of establishing the district] or by an election held in accordance with sections 9177 and 9178 of the General Statutes of 1915 [which relate

to the issuance of bonds by ordinary school districts]; provided, that notice of all such elections in rural high-school districts shall be given as provided in section 2 of this act. Except as herein provided, the laws relating to the issuing of school-district bonds shall apply to rural high-school districts formed in accordance with this act." (Laws of 1917, ch. 284, § 5.)

The defendants' position is that this statute gives an option as to the manner in which the election may be ordered, authorizing it to be called either by the county commissioners upon the petition of two-fifths of the electors, or by the school board upon the petition of one-third of them. The plaintiff on the other hand contends, as we think correctly, that the meaning of the statute quoted is that the bonds may be issued only where authorized by a vote cast at an election called by the county board if to be held at the same time the proposal to create the district is voted upon, and called by the board of the district if petitioned for after the district has been created. An election to decide whether a rural high school shall issue bonds, if held in connection with an election to decide whether the district shall be created, would necessarily have to be conducted by somebody already in existence, and the board of county commissioners was selected by the legislature as the natural agent for the purpose. But after the district has been brought into being there is no occasion whatever for its invoking the services in that regard of any officers other than its own. The language above quoted relating to section two of the act is fully accounted for by the fact that the statute, in defining the conditions under which bonds may be issued, had necessarily to mention the contingency of authority for their issuance having been granted before the organization of the district. The suggestion is made that unless the statute does offer a choice of methods of calling the election the amendment of 1917 made no change in the law as it already existed. If this were the case the new enactment might have been justified as a mere clarification of the existing law by substituting express provisions for mere implications—no judicial construction having then been given it. However, a material alteration was made in this respect: Under the original law only a ten days' notice of the bond election was required, that being the period named in the statute relating to ordinary

school districts (Gen. Stat. 1915, § 9178), while by the amend-ment the time is fixed at twenty-one days.    (Laws of 1917, ch. 284, § 2.)    We hold that the election was ordered by a body having no authority to take such action, and was with-out legal effect.

The validity of the election is also challenged on the ground that the notice was defective.    This objection is probably not well taken, but the conclusion already announced makes it unnecessary to consider that matter.

2.    It remains to determine whether the rural high-school district and the ordinary school district can lawfully unite in the construction of a single schoolhouse to be used by both. The question appears to be novel.    Notes on the capacity of a municipality to be a part owner of property or to enter into a partnership contract for the construction of an improvement are found in 35 L. R. A. 737 and Ann. Cas. 1916 C, 909, but the cases cited relate largely to agreements between public bodies and individuals or private corporations.    It has been held that a city and county (the county board being made up of the city council and three additional members) may pur-chase and hold in common the title to land to be used for a city hall and courthouse and jail.    (*De Witt v. San Francisco,* 2 Cal. 289.)    The matter principally discussed in the opinion, however, was the somewhat technical one of the capacity of corporations to hold title to realty in common with each other. Moreover, while the doctrine of implied powers applies to some extent to all governmental subdivisions, a larger freedom of action—a wider discretion in the choice of methods—is allowed to a city—a municipal corporation proper—than to any other, and doubtless to a county than to a school district, because of the wider field of its activities.    On the other hand an arrangement by which a city was to buy an interest in the county courthouse for the purpose of accommodating it with public buildings has been held invalid because of want of power in the county authorities to enter into such agreement. (*Bergen v. Clarkson,* 6 N. J. L. 352, 363.)    In a case holding that the legislature cannot require a city to bear the whole expense of a county building it has been said that where "the legislature authorizes such action" a city may establish im-

provements not exclusively for its own purposes, which will accommodate the larger bodies with which it is identified, and that it is common for cities to furnish accommodations in its public buildings, gratuitously or otherwise, for public officers and bodies which do not represent the city; and for city halls and similar buildings to be used for state and county court and executive purposes. (*Callam v. Saginaw*, 50 Mich. 7.) An arrangement by which through contributing to the cost of the building of a private academy the public had acquired a beneficial interest therein has been held to authorize taxation to provide a lighting plant for it. (*Brooks v. School District*, 73 N. H. 263.) Where the same officer is empowered to provide a high-school building and a primary-school building it has been held that he may in his discretion erect one building for both purposes, but there no question of divided control was involved. (*Smith v. State, ex rel.*, 187 Ind. 594.) Under a charter specifically granting a city authority to purchase and hold any estate whatever in property for corporation purposes, it has been held that an undivided interest in land cannot be purchased unless the right of the city to its occupancy and use so long as it holds such interest is distinctly and unequivocally secured, the intimation being that such a provision would make the action valid. (*Hunnicutt v. City of Atlanta*, 104 Ga. 1.) The right of a school district to use public funds in repairing a schoolhouse owned and controlled in part by several lodges has been denied, but the decision was affected by a statute requiring the trustees to take a fee-simple title to lands used for school sites. In the opinion it was said: "Whilst it is possible that there might be some saving in this arrangement at the start, it is evident that, in the long run, complications might arise which would compel the abandonment of the use of the property by the common-school district. It is better that both the spirit and language of the statute should be observed, and that the common-school buildings should be devoted exclusively to the purposes for which they were intended." (*Dawson, &c., v. Trustees Common School District No. 40*, 115 Ky. 151, 155.)

Inasmuch as the rural high-school district and the ordinary school district are separate organizations we think that without express legislative authority they have no power to join

in the erection of a schoolhouse for their common benefit. The situation that would be so created, involving a divided control, no provision being made for determining what course should be pursued if a difference of opinion should arise in some matter of policy relating to the use or the care, preservation or improvement of the building, is so anomalous that we cannot regard the authority to enter into such an arrangement as fairly inferable from that granted to each to erect a schoolhouse for its own use. It is true that in a particular case no difficulty in administration might ever in fact arise. But the possibility of such an occurrence is so obvious, and the advisability of the plan here sought to be followed out is so open to debate, that we feel constrained to hold that until further legislation on the subject a single building may not be erected by the two districts for their common use.

The judgment is reversed and the cause remanded with directions to grant the injunction prayed for.