(August 2, 1921.)

E. M. OLMSTEAD, Appellant, v. D. L. CARTER et al., Trustees of Rural High School District No. 1, Washington County, Respondents.

[200 Pac. 134.]

SCHOOL AND SCHOOL DISTRICTS — RURAL HIGH SCHOOL DISTRICT — SEGREGATION — SCHOOL DISTRICT BONDS — CONTROL OF SCHOOL PROPERTY.

1. Under Sess. Laws 1911, chap. 159, a board of county commissioners had power, upon unanimous agreement, to segregate a regularly organized common school district from a rural high school district, although the rural high school district was composed of only two common school districts.

2. A school district does not possess implied powers except such as are reasonably necessary to enable it to exercise the powers expressly granted.

3. Under the statutes of this state, there is neither express nor implied power in a school district to expend its funds in completing a school building situated upon the property of and belonging to another district under an arrangement whereby the two districts shall both enjoy the building when completed.

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

Action to enjoin issuance of school district bonds. Judgment of dismissal reversed.

Cherry, Donart & Henke, for Appellant, cite no authorities.

A. L. Freehafer, for Respondent.

"After a rural high school district has exercised the functions of such district for a period of nearly two years, its legal organization will be presumed." (*Pickett v. Board of County Commissioners*, 24 Ida. 200, 133 Pac. 112.)

This holding establishes the legal entity of said Rural School District No. 1, and ratifies and validates all its acts as a district.

James L. Boone, Asst. Atty. General, *Amicus Curiae.*

The action of the board of county commissioners of Washington county in segregating Common School District No. 5 from Rural High School District No. 1, was void. (Senate Bill No. 74, 1909 Sess. Laws, p. 73; chap. 159, 1911 Sess. Laws; chap. 122, 1915 Sess. Laws; chap. 215, 1921 Sess. Laws.)

Granting the legality of the segregation of Common School District No. 5 from Rural High School District No. 1, and the legality of the bond election, the proceeds derived from the sale of the bonds voted cannot be used for the purpose contemplated. (*Stewart v. Gish* (Kan.), 198 Pac. 259; *Dawson v. Trustees of Common School Dist. No. 40*, 115 Ky. 151, 72 S. W. 806.)

RICE, C. J.—This action was brought by appellant, a taxpayer of Rural High School District No. 1, Washington county, to restrain respondents, as trustees of the district, from issuing or selling certain bonds thereof.

It is alleged in the complaint that Rural High School District No. 1 was organized prior to January 18, 1913, and was originally composed of two regularly organized school districts; that on January 18, 1913, the board of county commissioners of Washington county duly made and entered its order segregating one of the districts from the rural high school district and that ever since that time the rural high school district has been and now is composed of the identical territory embraced in and covered by the remaining common school district; that a special bond election was regularly called and held June 24, 1921, at which the trustees of the district were authorized to issue bonds in the sum of $13,000; that the common school district, covering the territory embraced in the rural high school district,

has already issued bonds to the limit permitted by law; that the common school district has in the course of construction, and partially completed, a schoolhouse; that the same is now in an unfinished condition, and that it will require approximately $13,000 to complete it; that the trustees of the rural high school district and the common school district have entered into an agreement and understanding, whereby the building may be completed by the rural high school district and thereafter used for the convenience and accommodation of both districts, and that under the agreement a certain portion of the building is to be set apart and used by the rural high school district and the other portion by the common school district; that the construction of the building in this manner will result in a large saving and expense to the taxpayers of the district.

A demurrer was interposed to the complaint and sustained by the court, and appellant, refusing to amend, judgment of dismissal was entered, from which the appeal is taken.

The complaint does not set out in detail the steps taken in calling the special bond election, nor does it contain the notice of election specifying the purposes for which the bonds were to be issued. We assume, for the purposes of this opinion, that the bonds were voted by the electors for the purpose of completing the partially constructed schoolhouse belonging to the common school district.

Briefs have been filed by counsel for appellant and respondents and by the attorney general as a friend of the court. It is urged that the order of the board of county commissioners, made on January 18, 1913, segregating the two common school districts comprising the rural high school district, was beyond the power of the board, and therefore absolutely void; that consequently the bond election, having been held only in one of the two common school districts, was not valid and the bonds are therefore not legally authorized.

The rural high school district was organized pursuant to an act of the tenth session of the state legislature, found

in Sess. Laws 1909, page 73. This law provided for the organization of two or more regularly organized school districts, not having within their limits an incorporated city, into a rural high school district for the purpose of maintaining a high school therein.

Sess. Laws 1911, chap. 159, page 483, provided a code of laws for the public school system of the state. The provision of the law of 1909 with reference to rural high school districts was substantially re-enacted with the addition of section 141, which reads in part as follows:

"When two-thirds of those who are heads of families and residents of any regularly organized school district joined to a rural high school district shall present a petition to the board of county commissioners showing that it is to the best interests of the said regularly organized school district to be segregated from the rural high school to which said regularly organized district is joined, it shall be lawful for the said board, if they unanimously agree, to segregate said petitioning subdistrict from said rural high school district. . . . . "

It was in pursuance of the section last above quoted that the commissioners of Washington county made their order of segregation. It is contended that since the rural high school district could not be created out of less than two regularly organized common school districts, it was the intent of the legislature to require in all cases that a rural high school district must be composed of at least two common school districts, and that the power of segregation could be exercised only where the rural high school district was composed of more than two common school districts and where the order of segregation would not reduce the number of common school districts composing the high school district to less than two.

There are no means of learning the intent of the legislature except from the language of the statute as enacted. It seems reasonable to suppose that it was not contemplated that a rural high school district would be composed of less

than two common school districts, but section 141, quoted above, authorized the segregation of any regularly organized school district from a rural high school district. The language of this section is clear and unambiguous. Whatever may have been contemplated by the framers of the bill as to the probable result of its operation, section 141 is not so obviously inconsistent with the remainder of the law relating to rural high school districts, that it is necessary to restrict its application to such high school districts as may be composed of more than two common school districts. Any presumed intent cannot defeat the action of the board of county commissioners in the exercise of a power granted to it in clear and unmistakable language and justify us in holding its order void upon collateral attack.

Subsequently the law was again amended so as to prevent a segregation to less than two common school districts.

This appeal involves the question as to whether a rural high school district can legally expend its funds derived from the sale of its bonds for the completion of a school building owned by a common school district, in view of the arrangement between the two districts by which the building is to be used in common by them.

Sess. Laws 1921, chap. 215, page 457, provides: "The purpose for which bonds may be issued is to acquire or purchase school site or sites, to build or provide one or more schoolhouses or other needed buildings in said district, or to add to or repair said building or buildings or to provide or furnish the same with all furniture, apparatus, or equipment including lighting and heating, necessary to maintain and operate the school or schools, or any and all of said purposes; . . . . "

In the case of *Stewart v. Gish* (Kan.), 198 Pac. 259, the supreme court had under consideration a question similar to that which we are now considering. The Kansas statute, as quoted in the opinion of the court, provides as follows: "The rural high school district board shall have authority to issue the bonds of the rural high school district for the

purchase of a site and for the construction of a building or buildings for school purposes; . . . . ''

It was held in that case that in the absence of express statutory authority a rural high school district and an ordinary school district cannot lawfully unite in the construction of a single schoolhouse to be used by both. In its opinion the court said:

''Inasmuch as the rural high school district and the ordinary school district are separate organizations, we think that without express legislative authority they have no power to join in the erection of a schoolhouse for their common benefit. The situation that would be so created, involving a divided control, no provision being made for determining what course should be pursued if a difference of opinion should arise in some matter of policy relating to the use or the care, preservation, or improvement of the building, is so anomalous that we cannot regard the authority to enter into such an arrangement as fairly inferable from that granted to each to erect a schoolhouse for its own use. It is true that in a particular case no difficulty in administration might ever in fact arise. But the possibility of such an occurrence is so obvious, and the advisability of the plan here sought to be followed out is so open to debate, that we feel constrained to hold that until further legislation on the subject a single building may not be erected by the two districts for their common use.''

The powers which may be exercised by trustees of school districts, including rural high school districts, are granted by section 42, chap. 215, Sess. Laws 1921, above referred to. We do not find anything therein contained which indicates that the legislature contemplated or authorized the expenditure of the funds of a school district in completing a building situated upon the property of and belonging to another school district. The only implied powers which can be conceded to a school district are such as are reasonably necessary to enable it to exercise its powers expressly granted. We do not think the express power to provide one or more

schoolhouses carries with it an implication that the district may expend its funds in completing a schoolhouse belonging to another district, even though coupled with an arrangement whereby the two districts shall both enjoy the use of the building when completed.

Among the powers granted which are contained in section 46, chap. 215, Sess. Laws 1921, above referred to, are the following:

"8. To have charge of all school property in their district and to receive and hold in trust all real estate or other property conveyed to said district.

"9. To convey by deed duly executed and delivered all the estate or interest of their district in any schoolhouse, school property, or school site, when directed to do so by a majority vote of the qualified electors of said district. . . . . ''

These provisions of our statute, as well as others therein contained, are inconsistent with the idea of joint control of school property by separate districts.

It is true that in this case the territory comprising the high school district is identical with that contained in the common school district. The trustees in each district are elected by the same electors. Representing the same electors, the danger of conflicting interests and of divergent purposes in regard to the control of the building are extremely remote, and it may be said that no real injury could result to the property owners growing out of the joint control of the school property. But we are dealing with separate legal entities created by law and having no powers except those granted by law. To suspend the application of the law in this case would create an exception where the law makes none, and amount to an exercise of legislative powers by the court. The case appears to be one where hardship may result. But it seems that the hardship grows out of the failure of the trustees of the common school district to observe the law. They have commenced the construction of a building which they do not have funds to complete. Under the law they are required to let contracts

for the construction of buildings upon competitive bids, and it is difficult to understand how this situation arose.     The court can do nothing but interpret and construe the laws as they are and is powerless to afford relief when to do so involves a violation of law.

The judgment is reversed, with costs to appellant.

Budge, McCarthy, Dunn and Lee, JJ., concur.