No. 38,429

Ernest Kroeger, et al., *Appellants,* v. Rural High School District No. 3 of Republic County, Kansas, et al., *Appellees.*

(232 P. 2d 430)

Opinion filed June 9, 1951.

*Fred Swoyer, Percy H. Collins, Jr.,* and *N. J. Ward,* all of Belleville, were on the briefs for the appellants.

*Ed Chapman, Jr.,* of Belleville, and *Melvin R. Quinlan,* of Topeka, argued the cause, and *John S. Dean, Jr.,* and *Peter F. Caldwell,* both of Topeka, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was a suit wherein taxpayers sought to enjoin the issuance of bonds by Rural High School District No. 3 and Common School District No. 63, both in Republic County, as authorized by elections held January 6, 1951, and under circumstances herein related. For convenience we shall hereafter refer to the first district as the rural high district and to the second as the common school district.

Plaintiffs' amended petition, after setting forth formal matters, alleged that on June 10, 1949, the rural high district held an election to authorize bonds to provide funds for acquiring a site and erecting a school building, and that the proposition voted on in no respect provided for acquiring a site or using bond proceeds to construct a building for the joint use of the defendant districts; that the common school district owned a site and building in Republic, Kansas, and on June 10, 1949, held an election to authorize bonds for acquiring a site and erecting a building, and that no mention was made of a building for joint school purposes nor for change of site, and that no election for change of site had been had; that

at both of the above elections a majority voted in favor of the bonds, which have been issued and sold, and the districts held the proceeds; that neither had legally selected or acquired a school site for separate or joint purposes, but each threatened to illegally use the proceeds for acquiring a site and for the construction of a joint school building and would do so unless restrained. It was further alleged that on January 6, 1951, the rural high district held an election pursuant to notices upon the proposition of issuing bonds in the amount of $25,000 "for the purpose of raising funds, to be used with funds on hand, to pay said school district's share of the cost of erecting a building for school purposes, to be located at Republic, Kansas, within said Rural High School District No. 3, Republic County, Kansas, said building to be erected and used jointly by said Rural High School District No. 3, Republic County, Kansas, and Common School District No. 63, Republic County, Kansas"; that the funds referred to in said notice consisted of the funds raised by the bond election held June 10, 1949; that the bonds voted on January 6, 1951, exceeded the statutory limitation, without legal authority so to do, and would cause illegal taxes against the property of plaintiffs. It was then alleged that the common school district held an election on January 6, 1951, to vote on the proposition of issuing bonds in the amount of $5,000, under a notice substantially like that quoted above, and complaint similar to that last above noted was made. Then follow allegations that prior to January 6, 1951, the petitions filed with the rural high district were not signed by the requisite per cent of the qualified electors, and that the enumeration of voters was not properly made, with similar allegations with respect to the common school district. It was further alleged that the common school district had a building worth more than $400 and that the district was erecting a new building at a different location and that there had been no election to change the site; that notices of the bond election of January 6, 1951, by the rural high district were misleading and did not inform the voters the proceeds were to be used to build a joint building at a site different from the present building of the common school district and that the notices of the common school district of its election on January 6, 1951, were misleading and did not inform the electors the proceeds were to be used to build a joint building at a site a considerable distance from the present schoolhouse of the common school district.

Allegations that the defendants had illegally entered into contracts for the construction of a joint school building, in excess of the funds actually on hand, and that the two districts had already used and would continue to use illegally the proceeds of tax assessments, are noted but will not be detailed, nor will those allegations that the boards of the two districts were in conspiracy and agreement with each other in seeking without legal authority to create an illegal tax burden upon the property owners in the two districts. Reference was then made to the action instituted in 1949 which we disposed of in *State, ex rel., v. Rural High School District No. 3,* 169 Kan. 671, 220 P. 2d 164.

The prayer was that defendants be enjoined from issuing the bonds voted on January 6, 1951, from using any of the proceeds and from levying any tax for the purpose of obtaining money to do any of the things complained of in the petition and for equitable relief.

We notice the separate answers filed only to say they admit the holding of the elections, deny any irregularity or invalidity of the bonds voted, and state that when authorized by the court they would issue, register and sell the bonds.

On February 1, 1951, the court made an order restraining issuance of the bonds voted at the January 6, 1951, elections. Thereafter at a pretrial conference, the facts were agreed on, subject to specific objections that certain of them were not material or proper for consideration on any issue involved, and the cause was set for hearing, at which time the plaintiffs were to be permitted to offer in evidence any additional facts they might deem material. The final hearing was held, at which time some additional stipulations of fact were made and the trial court was requested to make findings of fact and conclusions of law, and each party was given an opportunity to file a brief. Later, the trial court found the facts and concluded that the plaintiffs had failed to show any cause of action or right to relief as against the defendants, and it dissolved the restraining order and rendered judgment that the plaintiffs recover nothing. Plaintiffs' motion for a new trial and their motion that the court set aside the conclusions of law made and make others favorable to them were denied and they perfected their appeal to this court.

The findings of fact are made up of forty-seven separate paragraphs, many of them making part thereof certain documents agreed

on at the pretrial conference. As a whole they include much that is not material in view of the questions presented, and in no particular of any consequence here is there any dispute as to their correctness. The point of division among the parties is the legal consequences following. Our statement is therefore much abbreviated. On June 10, 1949, each district held an election to vote bonds for the purpose of securing a site and constructing a school building. The issue of the rural high district amounted to $148,-000 and of the common school district to $25,000. These bonds have been issued and sold. On the above date the common school district owned a site and a school building worth over $400 and which was used for school purposes until about January 1, 1949. At the annual meeting of the rural high district on April 13, 1950, two sets of minutes were made, one covering a period while the director of the district presided, the other covering the entire meeting. The first minutes disclose that the meeting was called to order by the director and proceeded until a motion was made by an elector that the rural high district unite with the common school district in the purchase of a site and the construction of a school building for the joint use of the two districts, other parts of the motion not being of immediate interest. The motion was seconded, but the director stated the motion was premature; that the matter was in litigation and until the matter was determined by the supreme court it would be improper to vote on the motion. The director then called for a reading of the minutes of the meeting and upon vote taken they were disapproved. The last paragraph of these minutes states the meeting became disorderly and the director called for a motion to adjourn which was adopted and the director declared the meeting adjourned. These minutes appear to be signed by the clerk. The other minutes include the same motion for the joint school building, and that a request for a vote thereon was ignored by the director who declared the motion was out of order and who ignored a request that a vote be taken on the ruling; that thereafter the minutes were read and disapproved. The director asked for a motion to adjourn which was seconded; that the director ignored a request for a standing vote and declared the meeting adjourned and left the building; that the meeting continued and the motion for a joint building was adopted 207 votes to 4 votes. These minutes were verified by affidavits of ten persons. At the annual meeting of the common school district, held on April 14, 1950, the same motion

as to the district erecting a joint building was carried. Under date of July 31, 1950, the boards of the two districts entered into a contract with each other, reciting that pursuant to Chapter 353, Laws of 1949 (which is G. S. 1949, 72-317) and the vote of the respective annual meeting of each district in 1950 wherein each district voted upon the proposition of purchasing a site and constructing a building for the joint use of the districts, that the common school district would contribute $25,000 and the proceeds from the sale of its present building for the purpose of acquiring a site and for constructing a building and would pay a stated portion of the superintendent's and the music teacher's salary; that the rural high district would contribute $148,000 to the site and building and that each district would pay one-half of certain stated maintenance costs. Provision was also made as to the use of portions of the contemplated building. After this contract was signed the rural high district condemned a site adjoining the city limits of Republic and later the common school district paid the rural high district one-half of the condemnation moneys. Each district used for the purpose stated, proceeds arising out of the bonds voted on June 10, 1949. On December 4, 1950, a joint meeting of the boards of the two districts was had and at that time duly sufficient petitions were presented to each board to call elections for the rural high district to vote bonds of $25,000 to be used in connection with funds on hand to provide a building for the joint use of the two districts and for the common school district to vote bonds of $5,000 for the same purposes. It was found these additional bonds would be in excess of statutory limitations and petitions were presented to the school fund commission to exceed the statutory limit, and these petitions were approved. On December 12, 1950, each district voted to hold a special bond election on January 6, 1951, and that due notice be given. There is no dispute but that the notices were given and stated the proposition in the language quoted above as to the rural high district (and the same with appropriate change of amount and name of the rural high district stated in the common school proposition) and that the ballots used so stated the question to be voted upon. It was stipulated that the "funds on hand" referred to in the stated propositions were the proceeds of the bonds voted June 10, 1949. When the above elections were held the propositions submitted received a majority vote in favor thereof. If statement of other facts found is necessary, they will be referred to later.

From the findings made the trial court concluded that the proceedings leading up to the election of January 6, 1951, were in all respects regular and that the bonds voted were valid obligations; that there was no conspiracy or unlawful act by either of the two districts; that the site for the joint building was properly selected; that the proceedings at the annual election (of the rural high district) were not so irregular as to prevent the same being a proper direction to the school boards to enter into the contract for the construction and use of a joint school building, and that such contracts were regular and in conformity to law. The trial court further concluded that the attempted adjournment of the annual meeting of the rural high district by its director was without legal effect and that the electors of the district then remaining had a legal right to and did proceed with the business of the meeting.

Before discussing appellants' contentions the trial court erred we note that prior to the filing of the present action an action was commenced by the state to oust these districts from proceeding to erect a school building for their joint use, and briefly that in that action the trial court held that a special meeting of the rural high district on December 13, 1949, to vote on the proposal to build a building for the joint use of the two districts was not had under sufficient preliminary proceedings, and that the contract for such joint use must contain certain provisions. That judgment was affirmed by this court except with respect to the extent of the agreement for joint ownership and use of the building. See *State, ex rel., v. Rural High School District No. 3,* 169 Kan. 671, 220 P. 2d 164. It is not necessary we dwell at any length upon appellees' contention that the above judgment was *res judicata,* or appellants' contention that they were not parties to that action and not bound, or appellees' response that even if not parties they were in privity and are bound, for two reasons. One is that after the judgment there involved was rendered in the trial court and before our opinion on the appeal was filed, the rural high district commenced new proceedings leading to a special meeting, in an effort to comply with the trial court's judgment, and there is now no question but that the meeting was properly called. The sufficiency of the contract for joint use and maintenance is later treated. The other reason is that in view of other matters hereafter treated, such a discussion is unnecessary.

We note also that prior to the time the instant action was filed an action was filed by a number of taxpayers including many of those who are plaintiffs here and against these same defendants, and in

which the plaintiffs sought to enjoin performance of certain acts by the defendants. In some particulars matters sought to be adjudicated there are also presented in the instant case. The trial court held that the plaintiffs had no legal authority to maintain the action. The plaintiffs' appeal from that decision is disposed of in *Haines v. Rural High School Dist. No. 3,* 171 Kan. 271, 232 P. 2d 437.

We further note that appellees object to any consideration of appellants' contention as to claimed erroneous rulings in the admission or rejection of evidence for the reason such a ground was not stated in their motion for a new trial, nor did they specify as error the ruling on such motion. The record discloses that the objection is well taken and such complaint as is made will not be noticed.

We are somewhat perplexed in disposing of this appeal because of the manner in which it is presented. Appellants, in their abstract, specify error in thirteen particulars. In their brief no reference is made to any specification of error by statement or number. The brief does contain a heading "Questions Involved" in which seven questions are listed. Under fifteen different headings, which make no reference to either the specifications of error or to the "Questions Involved," at least in no informative way, is a somewhat repetitious argument.

Appellants direct our attention to authorities such as *Schofield v. School District,* 105 Kan. 343, 184 Pac. 480, 7 A. L. R. 788, wherein the rule is stated that the power of such a district to contract is only such as is conferred by express statute or by fair implication from the statute. That such is the rule is not open to debate and our disposition of this appeal is in light thereof.

Appellants seem to predicate much of their argument upon our decision in *Stewart v. Gish,* 109 Kan. 206, 198 Pac. 259, wherein it was held that:

"A rural high-school district and an ordinary school district, formed in part from the same territory, each having statutory authority to erect a schoolhouse for its own use, cannot without further legislation unite in the construction of a single building for their joint use." (Syl. ¶ 2.)

And although they recognize that there has been subsequent and further legislation, which as amended now appears as G. S. 1949, 72-317, they contend, in substance, that the latter legislation does not expressly confer any power for ownership, use, control and

management of the joint building; that in any event such power to unite in a joint building is conferred only on common school districts and not on rural high school districts; that even if authorized, the contract for joint use was not adequate; that such contract was not affirmed or re-executed after the January 1951 bond election; and that no site for the new building has ever been selected by either or both of the districts, and other associated questions.

Following the filing of our opinion in *Stewart v. Gish,* supra, in May, 1921, nothing was done by way of further legislation until the legislature enacted Laws 1927, Ch. 278, appearing in subsequent statutes and supplements as Ch. 72, Art. 3, § 317. This act bore the title "An Act authorizing school districts and rural high-school districts to unite in the construction of school buildings" and the body of the act provided that any common school district located wholly within the boundaries of any rural high-school district might unite with the rural high-school district in the construction of a school building for their joint use "upon such terms and conditions as the respective boards of such districts may agree upon." This act was amended by Laws 1943, Ch. 248, § 4 (G. S. 1945 Supp. 72-317) by addition of the words "provided a joint building shall have been authorized by the annual school meeting." The statute was again amended by Laws 1949, Ch. 353, § 1 (G. S. 1949, 72-317) so that the language last quoted was changed to read: "provided, the joint building shall have been authorized by a majority vote of the electors of each of such districts voting at either an annual or special school meeting." All of the matters here involved occurred subsequently to the date of the last amendment.

Appellants argue that the legislation, in order to be valid, must expressly confer on the districts the power to contract, must adequately provide for the selection of a site, for joint use, control, care, preservation, improvement and management of the building, for the termination of such arrangement, and for the raising of funds therefor. The argument seems to be that the above statute does not meet the requirement of House Bill No. 370 passed by the 1951 legislature. The last mentioned act pertains to action by a county and city for joint construction of certain buildings, and does not include all things appellants say are essential to validity. The last mentioned act has nothing to do with the act under consideration, sets no standards presently applicable and may be ignored for present purposes. Nor can we give any countenance to a contention

the act here under consideration may authorize a common school district to unite with a rural high school district, but that it does not confer any power on a rural high school district to unite with a common school district. Not only does the title of the act negative any such conclusion, but the body of the act and the language used precludes any such construction. Nor do we think the act is invalid because it does not set forth in greater detail the terms and conditions upon which the districts must agree, nor that to be valid there must be provision for termination. The legislature was aware that situations would vary dependent upon the extent of overlapping of territory, assessed value, size of each district, number of students attending each school, prospect of change in situation in the future and knew that an affirmative vote of a majority of the electors in each district would not be had unless the electors of the district wanted one or more buildings for the joint use of the two districts. In our opinion the statute is not to be stricken down for the reasons asserted by the appellants. And an examination of the contract, as prepared and executed between the two respective boards, discloses nothing that supports appellants' charge that it is inadequate, and they point out no defects or provisions which they contend make it so. As to the contention that the contract was not reaffirmed or re-executed after the 1951 bond elections, it is a sufficient answer that there is no statutory requirement to that effect. Actually the proposition submitted for vote at those elections, while not showing details of the contract, did challenge every elector's attention that an agreement had been made and inquiry of the clerk of either board would have disclosed the exact contract.

Appellants direct attention to the fact we have a statute (G. S. 1949, 72-501) that the site of a common school shall not be changed until the question has been submitted to the qualified electors at a meeting called for that purpose and a majority of those voting shall have declared in favor thereof, and another statute (G. S. 1949, 72-3502 and 3507) for an election to vote on establishing a rural high school site, and it is said there was no compliance with either of these statutes. The contention is not good. While the statutes mentioned are to be respected fully where applicable, they do not have application here. These districts were proceeding under another statute, G. S. 1949, 72-317, which contains no requirement as to a vote on the proposed site. By its very terms a change of site of one schoolhouse would be compelled if there were an affirmative

vote, and a change of site of both schoolhouses if the new building was to be located on a third site. The two school boards agreed on a joint building, the two districts voted to erect a joint building, the two school boards agreed on the site and the bond election of January, 1951, fixed the site at Republic. The statutory requirement was met.

Appellants also contend that the proposition submitted to the electors in each district must have been clearly stated, and that is correct, but they further contend that two propositions were submitted at each election: (1) Issuance of bonds and (2) location of site. The contention cannot be sustained. As stated above, the statute applicable does not require a vote on the site. If it did the fact remains that the election notice and ballots used in connection with the bonds under attack, stated the joint building was to be located at Republic, Kansas. And that such a site had been selected and acquired and the joint building is now in the course of construction is admitted. If the boards of the two districts are exceeding their powers in expending proceeds of bonds voted in June 1949 and January 1951, the state might complain but that plaintiffs may do so has been determined otherwise. See *Haines v. Rural High School Dist. No. 3,* supra.

In what has been said above we have disposed of each contention of which the appellants are in a position to complain. We note however that a contention is made that the contract for the construction of the joint school building is in excess of the power of the two school boards in that in addition to construction included in the base bid, the boards had the privilege or option of having further work done. After the January 6, 1951, bond elections to raise additional funds, the board exercised these privileges and options. The gist of this contention is that the school boards are abusing or exceeding their power. Plaintiffs are not entitled to maintain an action on account thereof. See *Haines v. Rural High School Dist. No. 3,* supra.

A consideration of the record discloses no error of which the appellants may complain and the judgment of the trial court is affirmed.