No. 39,114

STATE OF KANSAS, ex rel. ROBERT OSBORN, County Attorney of Rooks County, Kansas, *Appellee* and *Cross-Appellant*, v. ALBERT RICHARDSON, ORIA F. GROVER and ROY LOWRY, School Board of Rural High-school District No. 3 of Rooks County, Kansas, and ALFRED JACKSON, WALTER B. LOWRY and J. OTIS BECKLEY, School Board of Joint Common-school District No. U-3, Rooks and Graham Counties, Kansas, *Appellants.*

(256 P. 2d 135)

Opinion filed April 22, 1953.

*E. H. Hatcher,* of Topeka, argued the cause, and *W. H. Clark,* of Hoxie, *Marion W. Chipman,* of Hill City, and *Kenneth Clark,* of Hoxie, were with him on the briefs for the appellants.

*Robert Osborn,* of Stockton, argued the cause, and *D. A. Hindman* and *Stanley Krysl,* both of Stockton, were with him on the briefs for appellee and cross-appellant.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought to enjoin the respective school boards of Rural High-school District No. 3 of Rooks County, and Joint Common-school District No. U-3, Rooks and Graham Counties, from issuing general obligation bonds, as authorized by an election held by each school district on December 5, 1952, for the purpose of constructing a school building for the joint use of both such districts.

Presently Joint Common-school District U-3, Rooks and Graham Counties, is the owner of a school building in which classes are conducted for the common school and rural high school. Rural High-school District No. 3 is the owner of an auditorium, located on the land owned by the common-school district, and is used by both districts for music and athletics. The ground and buildings were taken and to be paid for by the federal government, in connection with the construction of Webster Dam.

The board members of the two school districts met and selected a new site for the construction of a joint school building. Notice of bond election for each district was published for the purpose of issuing bonds for the erection of a joint school building. Both elections were held on December 5, 1952. The result of the elections showed the bonds carried in each district.

An action to enjoin the issuance of bonds was commenced in the name of the State of Kansas on relation of the County Attorney of Rooks County, against the respective school districts, to which the defendant school districts filed their answer. A motion for judgment was filed by the County Attorney of Rooks County, hereinafter referred to as appellee, on pleadings thus joined, raising questions of law arising out of certain undisputed facts contained in the pleadings. The trial court sustained appellee's motion on the ground that the respective school boards had no authority to determine the question of uniting for the purpose of constructing a joint building and selecting a site for such proposed building, and that the notice of election was defective in certain particulars, and overruled appellee's motion on the constitutionality of the statutes involved. From the court's ruling sustaining the mentioned portion of the motion, the school districts, hereinafter called appellants, appeal, and from the order of the trial court overruling appellee's attack on the constitutionality of the statute involved, appellee cross-appeals. Inasmuch as the questions presented on appeal are defi-

nite, it is unnecessary here to digest the pleadings or make a statement of facts leading up to the questions involved as they will be treated, where necessary, in discussing each question submitted.

At the outset, appellee questions the right of appellant school districts to be heard on the ground that the director and one of the members of the school board of Joint Common-school District No. U-3 filed an affidavit subsequent to the appeal taken in this action, stating that he does not desire the appeal to be presented in his name as director of the Joint Common-school District U-3, and that he is satisfied with the judgment of the trial court, and that as director of the Joint Common-school District he has the right to control the litigation. It is unnecessary to decide this question inasmuch as any action taken on the part of the mentioned director would have no effect over the rights of the appellant, Rural High-school District No. 3, to be heard on its appeal. The interests of both the high-school district and the common-school district are joint and mutual. They have prosecuted this case through the district court, and from that judgment each has appealed to this court and, in no event, can it be said that the director of the Joint Common-school District board has the right to control the litigation of the Rural High-school District. The appellant High-school District has a right to have the questions raised on this appeal determined. There is no merit in appellee's contention that the appeal should be dismissed.

The first question presented to this court which must be answered is—whether in the case of a common-school district, located wholly or partly within the boundaries of a rural high-school district, the common-school district and the rural high-school district may unite in the construction of a school building for the joint use of both such districts without holding an election on the subject of uniting?

It should be understood that both schools are using common buildings at the present time. The ground and buildings have been taken over by the federal government to make way for the construction of the Webster Dam; that it will be necessary that new ground and buildings be obtained for educational purposes, either separately or jointly, for the districts involved. The questions presented to this court resolve themselves into the interpretation of G. S. 1951 Supp. 72-507 to G. S. 1949, which provides as follows:

"Any common-school district located wholly or partly within the boundaries of any rural or community high-school district may unite with such rural or community high-school district in the construction or purchase and subsequent

maintenance and improvement of a school building or school buildings for the joint use of both such districts, in the manner provided in this section. The estimated cost of the initial construction or purchase of such joint building or buildings, including the cost of purchasing a site or sites therefor and furnishing and equipping the same, and the amount to be borne by each of the uniting districts, shall be determined and agreed upon by the boards of such districts. Thereafter, each of such boards shall submit to the electors of its district, in the manner provided by law, the proposition of issuing bonds of the district in the amount as previously determined. Such proposition in addition to stating the amount of bonds to be issued by the district voting thereon and the purpose for which such bonds are to be issued, shall also show the total estimated cost of constructing or purchasing the building or buildings, and the vote in each district shall be conditional upon the corresponding proposition carrying in the other district. If a majority of the votes cast in each district on such propositions are in favor thereof, the board of each district may issue bonds in the amount authorized and join with the board of the other district in the construction or purchase of such joint building or buildings. The use, operation and maintenance of such joint building or buildings shall be upon such terms and conditions as the respective boards shall from time to time agree. After the initial construction or purchase of such joint building or buildings, further joint improvements, consisting of furnishing, equipping or remodeling such building or buildings, or constructing additions thereto, and requiring the issuance of bonds, shall be made in the same manner as the original construction or purchase: . . ."

Appellee contends that the legislative authorization under the foregoing statute for unitizing is vested in the joint common-school district and rural high-school district, and not in the school boards, as contended by the appellant, and invite our attention to G. S. 1949, 72-317, providing for the building of joint school buildings. It may be noted at this point that the statute quoted above is a revision of G. S. 1949, 72-317 which, before revised, read as follows:

"That any common-school district located wholly or partly within the boundaries of any rural high-school district may unite with such rural high-school district in the construction of a school building or school buildings for the joint use of both such districts, upon such terms and conditions as the respective boards of such districts may agree, provided, the joint building shall have been authorized by a majority vote of the electors of each of such districts voting at either an annual or special school meeting."

The two statutes differ in that G. S. 1949, 72-317 definitely provided that the school districts could not unite in the construction of a school building for the joint use of both such districts until "the joint building shall have been authorized by a majority vote of the electors of each of such districts voting at either an annual or a special school meeting." It is apparent that G. S. 1951 Supp. 72-507 does not contain any such clause. It says, in pertinent part,

any common-school district therein mentioned may unite with such rural high-school district in the construction or purchase and subsequent maintenance of a school building for the joint use of both such districts in the manner provided by that section. The estimated cost, including the cost of the purchasing of a site and furnishing and equipping the same, the amount to be borne by each of the uniting districts shall be determined and agreed upon by the *boards* of such districts. We are, therefore, confronted with the question of what was the legislature's intention in so revising the statute? It is the accepted rule of statutory construction that when a statute is revised, some part being omitted, the omitted parts are not readily to be supplied by construction, but are ordinarily to be considered as annulled. (*Hauserman v. Clay County,* 89 Kan. 555, 132 Pac. 212; *Schmeling v. F. W. Woolworth Co.,* 137 Kan. 573, 21 P. 2d 337.)

We will presume that the legislature in revising the mentioned statute intended to make some change in the existing law and we will, therefore, give effect to the amendment. A change in phraseology or a deleting of a phrase of the original act raises a presumption that the change of meaning was also intended. Summarized, it may be said that under G. S. 1949, 72-317, it was necessary to hold an election, that section being repealed by G. S. 1951 Supp. 72-507, the provisions pertaining to election being omitted, an election authorizing the joint building is not required, but is to be determined by the boards of the respective districts. Any other construction would simply mean the legislature accomplished nothing by its revision. It must be assumed it was intended to supply some want, to fill some deficiency, to add something to make existing legislation more complete. (*Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 674, 63 P. 2d 165; *City of Emporia v. Norton,* 16 Kan. 236.) Section 72-507 is complete in itself. It says definitely the two boards shall determine the question. They did so and the trial court erred in holding otherwise.

The second question confronting this court is whether the school boards of a common-school district and a rural high-school district, the common-school district being located partly within the boundaries of the rural high-school district, may select a site for the erection of a school building for the joint use of both such districts without submitting the question of selecting a site to the electors of the districts?

As stated, the pleadings in this case show that the school districts

were proceeding under G. S. 1951 Supp. 72-507, 72-2017 and 72-2018, and at no place in any of the mentioned sections does it appear that the question of selecting a site should be submitted to the electors of the districts. We held in *Kroeger v. Rural High School Dist. No. 3,* 171 Kan. 347, 232 P. 2d 430, that such an election was not necessary. In that case, one of the questions involved was whether there need be an election for change of site of a schoolhouse being constructed for the joint use of a common-school district located partly within the boundaries of a rural high-school district. The districts were proceeding under G. S. 1949, 72-317, of which section 72-507 is a revision. In the mentioned case, no election for changing of site had been had. The appellants in that case contended, as does the appellee in the instant case, that the site of a common-school district could not be changed until the question had been submitted to the electors at a meeting called for that purpose, and a majority of those voting had declared in favor thereof, and contended, as here, that G. S. 1949, 72-501 was controlling. At page 355 of the opinion, we stated:

"The contention is not good. While the statutes mentioned are to be respected fully where applicable, they do not have application here. These districts were proceeding under another statute, G. S. 1949, 72-317, which contains no requirement as to a vote on the proposed site."

From what has been said, it follows that the trial court erred in holding that the boards of the respective districts had no authority to select a site for the erection of a school building for the joint use of both such districts.

The third question presented is whether the notices of election prepared and posted by the two school boards were in compliance with the statute?

Section 72-507 provides, in substance, that the boards shall submit to the electors of each district, in the manner provided by law, the proposition of issuing bonds in the amount previously determined, and by stating the amount of bonds to be issued by the district voting thereon, and the purpose for which said bonds are to be issued, showing the total estimated cost of constructing or purchasing the building or buildings, and the vote of each district shall be conditional upon the corresponding proposition carrying in the other district. The reference "in the manner provided by law" is to sections 72-2017 and 72-2018. Section 72-2017 provides for the purchase or improving the site for the construction of a joint building and authorizes the issuance of bonds by the districts, as provided

therein. Section 72-2018 provides for the contents of the notice of the election. Notice must be posted twenty-one days prior to the election and such notice shall set forth the time and place of holding the election, the purpose for which the bonds are to be issued, and the amount thereof, in accordance with the procedure therein stated. One of the notices published is as follows:

"Notice of Rural High-school District No. 3,
Rooks County, Kansas, Bond Election

"Under authority of Sections 72-2017 and 72-2018 of the 1951 Supplement to the General Statutes of Kansas for 1949, it is hereby ordered by the District Board of Rural High School District No. 3, Rooks County, Kansas, that an Election be held at the Webster High School Auditorium in Webster, Kansas, commencing at eight o'clock A. M., and closing at six o'clock P. M., on the 5th day of December, 1952, upon the question of issuing General Obligation Bonds of said Rural High School District No. 3, Rooks County, Kansas, in the sum of not exceeding ONE HUNDRED THIRTY-FOUR THOUSAND DOLLARS ($134,000.00), for the purpose of providing funds to pay said School District's share of the cost of acquiring a site and erecting and equipping a building thereon for school purposes, at a cost of approximately $275,000.00, of which amount $108,461.00 will be paid by a grant from the Federal Government, and $134,000.00 by Rural High School District No. 3, Rooks County, Kansas, and $33,000.00 by Joint Common School District No. U-3, Rooks and Graham Counties, Kansas; provided, however, that said bonds shall not be issued unless and until the electors of said Joint Common School District No. U-3, Rooks and Graham Counties, Kansas, have authorized the issuance of $33,000.00 in General Obligation Bonds to pay its share of the cost of said joint building.

"The vote shall be by ballot, which ballot shall comply with all statutory requirements applicable thereto.

"Dated this 10th day of November, 1952.

"By order of the District Board.

"Oria F. Grover, *Clerk District Board.*"

An applicable similar notice was published by the joint common-school district. Appellee contends that the notice provided that the election was to be held in Webster, Kansas, when in fact the correct name of the town is Belmont.

An examination of a Rooks County Bonded Abstracter's special certificate, contained in the record, discloses that the townsites of both Belmont and Webster are located in Rooks County and, for a considerable length of time, were treated as two separate towns, but later became known as Webster, and is so called today. In fact the plat of the town of Webster was filed prior to that of the town of Belmont, and that the plat of Belmont, while called "Belmont Townsite" is, in fact, and should be so treated as an addition to the town of Webster. We take judicial notice that Webster is a

city situated in a rural community. (*Olsburg State Bank v. Anderson*, 154 Kan. 511, 512, 119 P. 2d 515.) As a result, no one in either school district could have been misled by the fact that the notice provided that the elections would be held in the school auditorium of the city of Webster.

Appellee next contends that the notices were defective in that each used the word "grant" in referring to the money to be received from the federal government. The pleadings reveal that the money to be paid by the federal government was the purchase price for the present school property jointly occupied by both schools. Appellee urged that the word "grant" was misleading as a matter of law because that word indicated the school districts were receiving a gift from the federal government. The word "grant" does not necessarily mean gift. The word "grant" as defined in Black's Law Dictionary, Third Edition, page 856, is "a method of transferring personal property, distinguished from a gift by being always founded on some consideration or equivalent. Its proper legal designation is an assignment or bargain and sale." The word "grant" is defined in Ballentine's Law Dictionary, Second Edition, as "the word is taken as a general term applicable to the transfer of all classes of real property."

The question is—did the use of the word "grant" mislead the voting members of the two schools as a matter of law?

We think not. The electors of the respective districts knew that their school site and buildings had been taken by the government in connection with the construction of Webster Dam, and they knew that when the word "grant" was used, it meant that the government was going to pay the sum of $108,461 for the present site and buildings. An examination of the notice posted by the respective districts reveals that all the necessary requirements of the pertinent statutes have been met and the court erred in holding that such notices were insufficient.

Appellee by its cross-appeal contends that sections 72-507, 72-2017 and 72-2018 are unconstitutional. It is a well-settled rule that an act duly passed by the legislature is presumed to be constitutional, and that before the courts can declare it invalid, it must clearly appear to be unconstitutional. (*Board of Education of School Dist. No. 1 v. Robb*, 168 Kan. 368, 212 P. 2d 306; *State, ex rel., v. School District*, 163 Kan. 650, 186 P. 2d 677; West's Kansas Digest, Constitutional Law, § 48, and 1 Hatcher's Kansas Digest [Rev. Ed.], Constitutional Law, § 16.)

It is somewhat difficult to follow appellee's contention. He argues that the statutes are unconstitutional because they violate the 14th amendment to the Constitution of the United States, and section 18 of the bill of rights of our State Constitution. He admits, however, that under the allegations of the pleadings in the instant case these questions are premature. While courts will not refuse to pass on the constitutionality in any proceeding in which such determination is necessarily involved, unnecessary consideration of attacks on their validity will be avoided and courts will not assume to pass upon constitutional questions unless they are properly before them. The general rule of law is well stated that only those constitutional questions which are duly raised and insisted upon and are adequately argued will be considered. (*Missionary Baptist Convention v. Wimberly Chapel Baptist Church,* 170 Kan. 684, 228 P. 2d 540.)

Appellee next contends that the statutes are unconstitutional because they violate article 2 of our state constitution. It appears to be appellee's contention that, in view of the fact the legislature eliminated the necessity of submitting to the electors of the respective districts the question of unitizing, the title of the new act should have so stated. If we are clear as to appellee's contention, the answer would be that the legislature in passing section 72-507 repealed G. S. 1949, 72-317, which provided for a majority vote of the electors for a joint school building. The requirement was, therefore, eliminated by the repeal of the section providing for it. The repeal of the section making the requirement was sufficient to eliminate the requirement and it need not be specifically stated in the title of the new statute. When a statute is repealed, the citation of the repealed statute in the title is sufficient.

Appellee next contends that the statute is unconstitutional because it violates section 1, article 2 of our state constitution, in that the legislative power of this state shall be vested in the house of representatives and the senate. The answer to this question seems to be that the legislature of our state has never taken upon itself the problem of choosing school sites for the many respective school districts in the state of Kansas, nor has it taken upon itself the question of determining whether any two or more school districts must unite for the construction of a joint school building. It is clear that the legislature had not delegated any of its legislative powers when it left with the joint school boards the authority of determining these questions. In view of the mentioned rules of

law, we agree that the trial court was correct in its ruling that the mentioned statutes were constitutional.

It follows that the judgment of the lower court is reversed on the appellants' appeal, and affirmed on appellee's cross-appeal.

It is so ordered.